UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

JAN-MICHAEL RIVES,

                                                        20-cv-621 (RPK) (LB)

                          Plaintiff,

              - against -

SUNY DOWNSTATE COLLEGE OF
MEDICINE, *et al.*,

                          Defendants.
-----------------------------------------------------------x

## DEFENDANTS' REPLY MEMORANDUM OF LAW
## IN FURTHER SUPPORT OF THEIR MOTION TO
## DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

                                                       **LETITIA JAMES**
                                                       Attorney General
                                                       State of New York
                                                       *Attorney for Defendants*
                                                       28 Liberty Street
                                                       New York, New York 10005
                                                       (212) 416-8663

*Of Counsel:*
Mark E. Klein

Dated: October 20, 2021

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................ii

ARGUMENT ...................................................................................................................... 1

    I.     SOVEREIGN IMMUNITY BARS MOST OF PLAINTIFF'S CLAIMS AGAINST SUNY DOWNSTATE AND THE INDIVIDUAL DEFENDANTS TO THE EXTENT THEY ARE SUED IN THEIR OFFICIAL CAPACITIES .......................... 1

    II.    THE APPLICABLE STATUTES OF LIMITATIONS BAR MOST OF PLAINTIFF'S CLAIMS ................................................................................................ 2

    III.   PLAINTIFF'S CLAIMS UNDER § 1983 FAIL AS A MATTER OF LAW AND SHOULD BE DISMISSED ................................................................................. 6

            1.   Plaintiff's Procedural Due Process Claim Fails ................................ 7

            2.   Plaintiff's Substantive Due Process Claim Fails .............................. 8

            3.   Plaintiff's Equal Protection Claim Fails ............................................ 9

    IV.   THE SAC FAILS TO PLAUSIBLY ALLEGE VALID DISCRIMINATION AND RETALIATION CLAIMS UNDER ANY OTHER FEDERAL LAW ..................... 10

    V.    THE SAC FAILS TO ALLEGE UNLAWFUL DISCRIMINATION OR RETALIATION UNDER STATE OR CITY LAW .................................................... 13

    VI.   PLAINTIFF'S COMMON LAW CLAIMS FAIL TO STATE A CLAIM FOR RELIEF ............................................................................................................... 14

    VII.  PLAINTIFF SHOULD NOT BE PERMITTED TO REPLEAD HIS CLAIMS ....... 15

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ................................................................................................ 12

*Baroor v. N.Y.C. Dep't of Educ.*,
 362 Fed. App'x 157 (2d Cir. 2010) .......................................................................... 3

*Barsoumian v. Williams*,
 29 F. Supp. 3d 303 (W.D.N.Y. 2014), *aff'd sub nom. Barsoumian v. Univ. at Buffalo*, 594 Fed. App'x 41 (2d Cir. 2015) ........................................................... 9

*Bishop v. Best Buy, Co.*,
 No. 08-cv-8427 (LBS), 2010 WL 4159566 (S.D.N.Y. Oct. 31, 2010), *aff'd*,
 518 Fed. App'x 55 (2d Cir. 2013) .......................................................................... 10

*Boddie v. Connecticut*,
 401 U.S. 371 (1971) .................................................................................................. 7

*Branum v. Clark*,
 927 F.2d 698 (2d Cir. 1991) ..................................................................................... 7

*Burch v. Pioneer Credit Recovery, Inc.*,
 551 F.3d 122 (2d Cir. 2008) ................................................................................... 15

*Cerbone v. Int'l Ladies' Garment Workers' Union*,
 768 F.2d 45 (2d Cir. 1985) ....................................................................................... 3

*Conn v. Gabbert*,
 526 U.S. 286 (1999) .................................................................................................. 9

*DiBlasio v. Novello*,
 344 F.3d 292 (2d Cir. 2003) ..................................................................................... 8

*Dube v. State Univ. of N.Y.*,
 900 F.2d 587 (2d Cir. 1990), *cert. denied sub nom.*, *Wharton v. Dube,* 501
 U.S. 1211 (1991) ................................................................................................ 1, 2

*Ex parte Young*,
 209 U.S. 123 (1908) .................................................................................................. 2

*Fekete v. County of Chenango*,
 303 Fed. App'x 932 (2d Cir. 2008) ........................................................................ 15

*Gomez v. New York City Police Dep't*,
 191 F. Supp. 3d 293 (S.D.N.Y. 2016) .................................................................... 13

*Harrison v. SUNY Downstate Med. Ctr.*,
   16-cv-1101 (RRM) (CLP), 2018 WL 4055278 (E.D.N.Y. July 6, 2018),
   *reported and recommendation adopted*, 2018 WL 4054868 (Aug. 24, 2018) ..........................2

*Kia P. v. McIntyre*,
   235 F.3d 749 (2d Cir. 2000)...................................................................................................9

*Kornmann v. City of New York Bus. Integrity Comm'n*,
   467 F. Supp. 3d 54 (E.D.N.Y. 2020) ..................................................................................13

*Krevat v. Burgers To Go, Inc.*,
   No. 13-cv-6258 (JS) (AKT), 2015 WL 1412707 (E.D.N.Y. Mar. 23, 2015) ........................15

*Leitner v. Westchester Cmty. Coll.*,
   779 F.3d 130 (2d Cir. 2015)...............................................................................................1, 2

*Malkan v. Mutua*,
   No. 12-cv-236-A (RJA), 2012 WL 4722688 (W.D.N.Y. Oct. 3, 2012) ..............................4, 5

*McCarthy v. Volkswagen of Am., Inc.*,
   55 N.Y.2d 543 (1982) ............................................................................................................4

*McLeod v. Verizon N.Y., Inc.*,
   995 F. Supp. 2d 134 (E.D.N.Y. 2014) .................................................................................14

*Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*,
   815 F. Supp. 2d 679 (S.D.N.Y. 2011) .................................................................................10

*N.Y.S. Court Clerks Assoc. v. Unified Court System of the State of N.Y.*,
   25 F. Supp. 3d 459 (S.D.N.Y. 2014)....................................................................................14

*Okoh v. Sullivan*,
   No. 10-cv-2547 (SAS), 2011 WL 672420 (S.D.N.Y. Feb. 24, 2011), *aff'd,* 441
   Fed. App'x 813 (2d Cir. 2011).............................................................................................14

*Pierre v. N.Y. State Dep't of Corr. Servs.*,
   No. 05-cv-00275 (RJS), 2009 WL 1583475 (S.D.N.Y. June 1, 2009) ...................................2

*Pietri v. N.Y.S. Office of Court Admin.*,
   936 F. Supp. 2d 120 (E.D.N.Y.2013) ....................................................................................3

*Ruotolo v. City of N.Y.*,
   514 F.3d 184 (2d Cir. 2008).................................................................................................15

*Semper v. New York Methodist Hosp.*,
   786 F. Supp. 2d 566 (E.D.N.Y. 2011) ...................................................................................3

*Slayton v. Am. Express Co.*
   460 F.3d 215 (2d Cir. 2006), *aff'd,* 604 F3d 758 (2d Cir. 2010).........................................5, 6

*Velez v. Levy*,
   401 F.3d 75 (2d Cir. 2005)..................................................................................................8, 9

*Vill. of Willowbrook v. Olech*,
    528 U.S. 562 (2000) ..........................................................................................9

*Zerilli–Edelglass v. N.Y.C. Transit Auth.*,
    33 F.3d 74 (2d Cir. 2003) ...................................................................................3

*Zinermon v. Burch*,
    494 U.S. 113 (1990) ..........................................................................................8

**CONSTITUTIONAL PROVISIONS**

U.S. Const. amend. I ...................................................................................................9

U.S. Const. amend. XI .....................................................................................1, 2, 14

**FEDERAL STATUTES**

20 U.S.C. § 1658 .........................................................................................................6

42 U.S.C. § 1983 ................................................................................................ passim

**RULES**

New York CPRL
    § 208 ...................................................................................................................4
    § 208(a) ...........................................................................................................2, 4
    Article 78 ........................................................................................................7, 8

Defendants respectfully submit this reply memorandum of law in further support of their motion to dismiss the SAC.[1] As shown below, Plaintiff's opposition memorandum ("Pl. Opp.") fails to rebut Defendants' detailed showing that Plaintiff's claims are barred under the Eleventh Amendment; are untimely; and fail to state a valid claim for relief. The SAC should therefore be dismissed in its entirety, and with prejudice.

## ARGUMENT

**I. SOVEREIGN IMMUNITY BARS MOST OF PLAINTIFF'S CLAIMS AGAINST SUNY DOWNSTATE AND THE INDIVIDUAL DEFENDANTS TO THE EXTENT THEY ARE SUED IN THEIR OFFICIAL CAPACITIES.**

In their moving brief, Defendants, citing *Dube v. State Univ. of N.Y.*, 900 F.2d 587, 594 (2d Cir. 1990), *cert. denied sub nom.*, *Wharton v. Dube,* 501 U.S. 1211 (1991), demonstrated that the Eleventh Amendment bars Plaintiff's claims under §§ 42 U.S.C. 1981 and 1983, the SHRL and the CHRL, and New York common law as against SUNY Downstate and the Individual Defendants to the extent they are sued in their official capacities. Defs.' Mem. at 5.

In his opposition, Plaintiff attempts to distinguish *Dube* by stating that that case "was an action against the greater SUNY system," but, supposedly, in contrast, "[t]his is an action against a single college in the SUNY system, many of which have been found to be merely fingers, or lesser appendages." Pl. Opp. at 7-8, citing *Leitner v. Westchester Cmty. Coll.*, 779 F.3d 130 (2d Cir. 2015). However, *Leitner* provides no support for Plaintiff's argument, because, unlike this case, *Leitner* involved a SUNY community college. *Leitner*, 779 F.2d at 132. The Second Circuit in *Leitner* itself recognized the distinction between SUNY community colleges and other SUNY entities, like SUNY Downstate, stating that, while the Court had "held that SUNY itself is entitled to sovereign immunity because it is 'an integral part of the government of the State,' we have yet to decide whether sovereign immunity extends to SUNY's community colleges." *Id.* at 136 (quoting *Dube*, 900 F.2d at 594). Moreover, courts within this Circuit have repeatedly found that

---

[1] The defined terms set forth in Defendants' moving memorandum ("Defs.' Mem.") will also be used herein.

SUNY Downstate is entitled to Eleventh Amendment immunity, including recently in *Harrison v. SUNY Downstate Med. Ctr.*, 16-cv-1101 (RRM) (CLP), 2018 WL 4055278, at *6-7 (E.D.N.Y. July 6, 2018), *reported and recommendation adopted*, 2018 WL 4054868 (Aug. 24, 2018). In short, Plaintiff's attempt to distinguish *Dube* and his reliance on *Leitner* are both unavailing.

Plaintiff also appears to rely on *Ex parte Young*, 209 U.S. 123 (1908), for the proposition that he is seeking "only prospective, injunctive relief, so that such immunity by no means bars this suit." Pl. Opp. at 1 & n.2. Before applying this exception, however, a court is "specifically required . . . to examine whether there exists an ongoing violation of federal law." *Pierre v. N.Y. State Dep't of Corr. Servs.*, No. 05-cv-00275 (RJS), 2009 WL 1583475, at *18 (S.D.N.Y. June 1, 2009) (internal citation omitted). However, where, as here, a plaintiff alleges "only discrete acts of *past* discrimination and retaliation," merely characterizing the request for relief as prospective will *not* suffice to invoke the *Ex parte Young* doctrine. *Id.* (emphasis added) (internal citation omitted). Because Plaintiff is only seeking relief from alleged past discrimination and retaliation, the *Ex parte Young* exception has no application to this case.

Plaintiff's attempts to overcome Eleventh Amendment immunity thus fail. Accordingly, all of Plaintiff's claims under §§ 1981 and 1983, the SHRL, the CHRL and New York common law are barred against SUNY Downstate and the Individual Defendants to the extent they are sued in their official capacities, and should be dismissed.

## II. THE APPLICABLE STATUTES OF LIMITATIONS BAR MOST OF PLAINTIFF'S CLAIMS.

Defendants demonstrated in their moving brief that the majority of Plaintiff's claims are barred under the applicable statute of limitations. Defs.' Mem. at 6-11. Plaintiff's response is disjointed, scattershot and, ultimately, unavailing. Significantly, Plaintiff does not argue that his claims were brought within the applicable statutes of limitations. Rather, Plaintiff presents "two arguments" for tolling the statute of limitations in this case: equitable tolling and statutory tolling under § 208(a) of the New York Civil Practice Law & Rules. Pl. Opp. at 23-25.

As to the first of these, it is well-established that the doctrine of equitable tolling is "only appropriate in rare and exceptional circumstances, in which a party is prevented in some extraordinary way from exercising his rights." *Baroor v. N.Y.C. Dep't of Educ.,* 362 Fed. App'x 157, 159 (2d Cir. 2010) (quoting *Zerilli–Edelglass v. N.Y.C. Transit Auth.,* 33 F.3d 74, 80 (2d Cir. 2003)); *see also Semper v. New York Methodist Hosp.*, 786 F. Supp. 2d 566, 577 (E.D.N.Y. 2011) (quoting *Zerilli–Edelglass*, 333 F.3d at 80) ("In considering whether equitable tolling applies, courts consider whether the party seeking its application: '(1) has acted "with reasonable diligence during the time period [he] seeks to have tolled,' and (2) has proved that the circumstances are so extraordinary that the doctrine should apply.")). More specifically, equitable tolling may be appropriate where, for instance, "the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct . . ." (*id*. at 578 (quoting *Zerilli*, 333 F.3d at 80-81)); *see also Cerbone v. Int'l Ladies' Garment Workers' Union,* 768 F.2d 45, 50 (2d Cir. 1985) (doctrine was applicable where, for example, "the defendant misrepresented the length of the limitations period or in some way lulled the plaintiff into believing that it was not necessary for him to commence litigation." )

None of the requisite circumstances is present in this case. Significantly, it is a plaintiff's burden to set forth in his complaint facts from which the Court could conclude that he was either unaware of or prevented from pursuing his cause of action because of the defendant's misleading conduct. *Pietri v. N.Y.S. Office of Court Admin.,* 936 F. Supp. 2d 120, 138 (E.D.N.Y.2013). Here, there is no allegation that Plaintiff was unaware of his claims, let alone because of Defendants' conduct. To the contrary, Plaintiff's argument in favor of equitable tolling is based entirely on his assertion that "there was no time prior to January 31st, 2017 when [he] could have sued the defendants without putting [his] career in grave jeopardy. So long as there was *any* chance of salvaging the situation without resorting to the courts, it would have been premature and foolish

of [him] to bring legal action." *Id.* at 24 (emphasis in original). Thus, Plaintiff admits that he was aware of his claims but deliberately chose not to pursue them. Plaintiff cites no legal authority for applying equitable tolling under such circumstances and, in fact, there is none.

Nor is there is any basis for tolling any statute of limitations pursuant to CPLR § 208(a), which extends an applicable statute of limitations "because of infancy or insanity" for the "period of disability." Plaintiff does not claim that he ever was legally insane; nor does he even attempt to identify the "period of [his] disability." Instead, he merely conclusory asserts that the "mental injuries [he] sustained as a result of the defendants' misconduct left [him] incapable of functioning in society, or of recognizing [his] injury, [his] rights, and the legal remedies available to [him]." Opp. at 24. The New York Court of Appeals has recognized, however, that "the legislative history of CPLR 208 indicates that the Legislature intended the toll for insanity to be *narrowly interpreted*." *McCarthy v. Volkswagen of Am., Inc.*, 55 N.Y.2d 543, 548 (1982) (emphasis added) (noting that "[w]hen the CPLR was enacted, the Advisory Committee on Practice and Procedure reviewed the possibility of substituting the phrase 'mental illness' for the term 'insanity' contained in the tolling provision. This suggestion was rejected because of the fear that this change might result in unwarranted extensions of the time within which to commence an action"). Plaintiff has not provided any basis for contending that "insanity" precluded him from timely filing his claims. Thus, Plaintiff's resort to CPLR § 208(a), which the New York courts have held should be "narrowly interpreted," should be rejected.

In addition to these tolling arguments, Plaintiff argues that an allegedly "ongoing" violation of federal law extends the certain of the statutes of limitations in this case. Specifically, relying on *Malkan v. Mutua,* No. 12-cv-236-A (RJA), 2012 WL 4722688, at *7 (W.D.N.Y. Oct. 3, 2012), Plaintiff asserts that a letter defendant Adler wrote "on or about July 21, 2015 -- which, according to Plaintiff, Defendants have never "produced" and which allegedly contains "false (or false-light) statements" (Pl. Opp. at 13) -- constitutes an "ongoing violation of federal law" because the letter

4

continues to form a part of his academic record. Pl. Opp. at 13 & n.21. *Malkan* involved a claim by a Clinical Associate Professor at SUNY Buffalo Law School that his employment was terminated in violation of his five-year employment contract with the State. *Id*. at **1-2. In denying the defendants' motions to stay a state court action and to dismiss some of the relief sought by the plaintiff, the court found that the "existence of derogatory information in the plaintiff's personnel file, if found to be the result of a violation of due process, would be an ongoing violation of federal law." *Id*. (citing no authority). However, unlike *Malkan*, this case is not an employment case, and the July 2015 letter about which Plaintiff complains is not part of a "personnel file." Moreover, the SAC does not allege that SUNY has ever suggested it would disclose Adler's letter to future employers or educational institutions, and Plaintiff does not otherwise explain why this would be so. Moreover, for the reasons set forth in Defendants' moving brief and below, there has been no violation of due process in this case. In short, *Malkan* has no application to this case, and provides no support whatsoever for Plaintiff's contention that a supposed "ongoing violation of federal law" extends any applicable statute of limitations.

Finally, Plaintiff argues that his § 1983 claims, asserted for the first time in the amended complaint, should relate back to his original complaint. Pl. Opp. at 3. However, Plaintiff entirely fails to rebut Defendants' showing that, because Plaintiff's original complaint contained no factual assertions (as opposed to conclusory ones) regarding alleged violations of his due process rights (*see* ECF No. 1 ¶¶ 11, 12, 47), the nineteen paragraphs of allegations relating to Plaintiff's § 1983 claims set forth in his amended complaint filed almost a year later (*see* ECF No. 15, ¶¶ 159-177) did not relate back to his original complaint, and were thus untimely. Defs.' Mem. at 7-8. In his opposition, Plaintiff quotes from paragraphs 46 and 47 of his original complaint, which contain a solitary reference to his being "suddenly dismissed, without any due process," as well as to allegations in other paragraphs that he was "arbitrarily assigned failing grades." Pl. Opp. at 3-4. Relying on *Slayton v. Am. Express Co*. 460 F.3d 215, 228 (2d Cir. 2006), *aff'd,* 604 F3d 758 (2d

Cir. 2010). Plaintiff then asserts that these allegations provided "adequate notice" to Defendants of his due process and equal protection claims. *Id*. at 4. But *Slayton* contains the same qualification of the relation-back doctrine to which Defendants cited in their moving brief: "[E]ven where an amended complaint tracks the legal theory of the first complaint, claims that are based on an 'entirely distinct set' of factual allegations will not relate back." *Slayton*, 460 F.3d at 228 (citation omitted). Because the nineteen paragraphs of allegations in Plaintiff's amended complaint constituted an "entirely distinct set" of factual allegations, his relation-back argument fails.

But even if the Court determines that Plaintiff's relation-back argument is valid, it is beside the point, because, as set forth in Defendants' moving brief and Section III below, all of Plaintiff's § 1983 claims, timely or not, fail to state a valid claim and should be dismissed on that basis alone. Defs.' Mem. at 12-17. The same is true with respect to Plaintiff's contention that the four-year "catch-all" statute of limitations provided by 28 U.S.C. § 1658 applies to his claims under the Rehabilitation Act and the ADA (*see* Pl. Opp. at 4). Besides the fact that Plaintiff does not identify what claims, if any, are rendered timely from the application of a four-year statute of limitations instead of a three-year one, as discussed further below, Plaintiff does not rebut Defendants' showing that such claims, even if timely, are nonetheless invalid as a matter of law.

### III. PLAINTIFF'S CLAIMS UNDER § 1983 FAIL AS A MATTER OF LAW AND SHOULD BE DISMISSED.

As Defendants demonstrated in their moving brief, even if Plaintiff's § 1983 claims are not time-barred, they are invalid as a matter of law and, on this independent ground, all such claims should be dismissed in their entirety against SUNY Downstate and the Individual Defendants in both their official and personal capacities.[2] Defs.' Mem. at 12-17. Plaintiff has entirely failed to rebut Defendants' showing.

---

[2] Defendants also demonstrated that Plaintiff's purported claim under § 1981 should be dismissed. Defs'. Mem. at 11-12. In his Opposition, Plaintiff "concede[s] that the claim cannot lie under § 1981, which proscribes only racial

### 1. Plaintiff's Procedural Due Process Claim Fails.

Plaintiff asserts in his opposition that New York recognizes an implied contract between a college or university and its students, and that this implied contract "provides the basis for a property interest that would be entitled to constitutional protection." Pl. Opp. at 7-8, quoting *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991).[3] But even assuming Plaintiff had a property interest in the continuation of his medical school studies, he is nonetheless unable to allege facts demonstrating that he was deprived of "an opportunity . . . granted at a meaningful time and in a meaningful manner for [a] hearing appropriate to the nature of the case." Defs.' Mem. at 14 (quoting *Boddie v. Connecticut*, 401 U.S. 371, 378 (1971)). Moreover, as Defendants demonstrated in their moving brief, the Second Circuit has expressly, and repeatedly, held that (i) a § 1983 procedural due process claim is *not* available where there was an adequate state post-deprivation procedure to remedy an alleged deprivation of due process, and (ii) "an Article 78 proceeding is a perfectly adequate postdeprivation proceeding." Defs.' Mem. at 15 and cases cited. Plaintiff's only response to this showing is his baseless assertion that, despite the numerous Second Circuit decisions to the contrary, Defendants supposedly "cannot raise such an argument at this stage" and that, quoting an inapposite 1930 Supreme Court case, the "adequacy of legal remedy is an affirmative defense which must be pleaded and cannot be raised upon a motion to dismiss the complaint." Pl. Opp. at 9. But, as already shown, courts regularly dismiss § 1983 due process claims at the pleading stage based on the availability of post-deprivation Article 78 proceedings.

---

discrimination." Pl. Opp. at 13.

[3] Neither *Branum* nor any other case cited by Plaintiff involved a student's indisputable failure to comply with one of the express conditions upon which he had been permitted to remain at the school in question: in this case, the requirement that Plaintiff "*must* take the [United States Medical Licensing Exam] Step 1 by no later than October 31, 2016," or by the extended date to which SUNY Downstate agreed. *See* Exhibit A to the July 30, 2021 Klein Decl. (emphasis added); SAC ¶¶ 148, 157, 159. Plaintiff simply fails to plausibly allege why his dismissal under these circumstances was arbitrary or carried out in bad faith.

Defs.' Mem. at 15.

Equally unavailing is Plaintiff's reliance on *Zinermon v. Burch*, 494 U.S. 113, 129 (1990), and *DiBlasio v. Novello*, 344 F.3d 292, 302 (2d Cir. 2003), which Plaintiff cites for the proposition that "where it is feasible to provide a pre-deprivation hearing, the State 'generally must do so regardless of the adequacy of a postdepivation tort remedy to compensate for the taking.'" Pl. Op. at 10 & n.14. But Plaintiff's contention ignores that SUNY Downstate did provide him with a number of "pre-deprivation" hearings before finally determining that he should be dismissed from the College, including: a December 15, 2016 meeting with the Students Appeals Committee (SAC ¶ 149), and an appeal from that committee's determination to Dean Pato, as well as a meeting with Dean Pato, on January 23, 2017, before Dean Pato issued his decision (SAC ¶ 160). That Plaintiff disagrees with the Committee's and Dean Pato's determinations does not negate that he was provided with "pre-deprivation" hearings. Nor does it negate the fact that Plaintiff failed to avail himself of an Article 78 proceeding to redress any alleged violation of his due process rights. Because Plaintiff had access to adequate pre- and post-deprivation procedures to redress any alleged violation of his due process rights, Plaintiff's procedural due process claim fails as a matter of law and should be dismissed against all Defendants.

### 2. Plaintiff's Substantive Due Process Claim Fails.

Defendants demonstrated in their moving brief that Plaintiff's allegation that his "dismissal was arbitrary and carried out in bad faith" (SAC ¶ 178) is an insufficient basis to assert a substantive due process claim. Defs.' Mem. at 16. In response, Plaintiff quotes from *Velez v. Levy*, 401 F.3d 75, 94 (2d Cir. 2005), for the proposition that "malicious and sadistic abuses of power by government officials, intended to oppress or to cause injury and designed for no legitimate government purpose, unquestionably shock the conscience." Pl. Opp. at 12. Yet none of the allegations in this case even come close to satisfying this standard. Moreover, as the *Velez* Court itself explained, "what would serve to raise defendant's actions beyond the wrongful to the

unconscionable and shocking are facts which, if proven, would constitute, in themselves, specific constitutional violations. And we have held that where a specific constitutional provision prohibits government action, plaintiffs seeking redress for that prohibited conduct in a § 1983 suit cannot make reference to the broad notion of substantive due process." *Velez*, 401 F.3d at 94 (citing *Kia P. v. McIntyre,* 235 F.3d 749, 757-58 (2d Cir. 2000) ("[W]here another provision of the Constitution provides an explicit textual source of constitutional protection, a court must assess a plaintiff's claims under that explicit provision and not the more generalized notion of substantive due process.") (quoting *Conn v. Gabbert,* 526 U.S. 286, 293 (1999) (internal quotes and citation omitted))). The *Velez* Court concluded: "Because we believe that, as a matter of law, defendants' purported actions would not—but for the allegations of First Amendment violations, or (now abandoned) Equal Protection Clause violations—be sufficiently shocking to state substantive due process claims, we conclude that plaintiff's substantive due process claim is either subsumed in her more particularized allegations, or must fail." *Id*. *See also Barsoumian v. Williams*, 29 F. Supp. 3d 303, 315-16 (W.D.N.Y. 2014), *aff'd sub nom. Barsoumian v. Univ. at Buffalo*, 594 Fed. App'x 41 (2d Cir. 2015).

The same is true here. Plaintiff's substantive due process claim is either subsumed in his more particularized procedural due process allegations in the SAC, or it fails. Either way, Plaintiff's substantive due process claim should be dismissed in all respects.

### 3. Plaintiff's Equal Protection Claim Fails.

Finally, any claim that Plaintiff was denied equal protection of the laws should be dismissed because Plaintiff has failed to allege facts sufficient to show that he was intentionally treated differently from others who are similarly-situated "in all material respects." Defs.' Mem. at 16-17 and cases cited. In his opposition, Plaintiff asserts that one of the many cases to which Defendants cited, *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000), was a summary judgment case, and it "is not [his] burden at this stage" to demonstrate that he was treated

differently from others who are similarly situated. Pl. Opp. at 14. Although Plaintiff is correct that, at the motion to dismiss stage, it is not necessary for Plaintiff to provide "evidence" demonstrating that he was treated differently from similarly-situated comparators, "a court still must determine whether, based on a plaintiff's allegations in the complaint, it is plausible that a jury could ultimately determine that the comparators are similarly situated." *Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 815 F. Supp. 2d 679, 697-98 (S.D.N.Y. 2011). "Thus, '[w]ell-pled facts showing that the plaintiff has been treated differently from others similarly situated remains an *essential* component of such a claim [and] [c]onclusory allegations of selective treatment are insufficient to state an equal protection claim.'" *Id*. at 698 (emphasis added) (quoting *Bishop v. Best Buy, Co.,* No. 08-cv-8427 (LBS), 2010 WL 4159566, at *11-12 (S.D.N.Y. Oct. 31, 2010) (citation and internal quotation marks omitted) (granting the City defendants' Rule 12(b)(6) motion to dismiss the plaintiff's equal protection claim because the "plaintiff had failed to allege or identify a single similarly situated [individual] who was treated differently by the City Defendants"), *aff'd*, 518 Fed. App'x 55 (2d Cir. 2013).

In short, both *Mosdos Chofetz Chaim* and *Bishop* (both of which Defendants cited in their moving brief) make clear that a plaintiff's complaint must adequately allege the existence of similarly-situated individuals who were treated differently than the plaintiff and, in the absence of such allegations, a plaintiff's equal protection claim should be dismissed. Because the SAC merely contains, at best, conclusory allegations that other similarly-situated individuals were treated differently (*see* SAC ¶¶ 183, 184), and Plaintiff has not even attempted to allege that such unidentified comparators were similarly situated "in all material respects," Plaintiff's equal protection claim should be dismissed against all Defendants.

### IV. THE SAC FAILS TO PLAUSIBLY ALLEGE VALID DISCRIMINATION AND RETALIATION CLAIMS UNDER ANY OTHER FEDERAL LAW.

Defendants demonstrated in their moving brief that Plaintiff has failed to allege plausible discrimination and retaliation claims under the Rehabilitation Act, the ADA or Title IX. Defs.'

10

Mem. at 17-23. In his opposition, Plaintiff "concede[s]" that his allegation of an "unwelcome sexual advance by defendant Merlino" "cannot be brought under Title IX." Pl. Opp. at 14.[4] Plaintiff also acknowledges that there is no individual liability under either the Rehabilitation Act or the ADA, and now claims that he does "not bring claims against the individual-capacity defendants under these Acts." *Id.* at 16. Although Plaintiff attempts to pursue his discrimination and retaliation claims against SUNY Downstate under the Rehabilitation Act and the ADA, he nonetheless fails to state a valid claim under either statute.

First, Defendants demonstrated that Plaintiff's discrimination claims under the Rehabilitation Act and ADA should be dismissed because Plaintiff does not, and cannot, plausibly allege that he was "otherwise qualified" to receive the benefit he was allegedly denied and that, indeed, the allegations of the SAC are to the contrary. *See* Defs.' Mem. at 19. Plaintiff responds by asserting that "[his] needing more time to study" for the Step 1 exam beyond the almost eight months of uninterrupted study time provided him "goes precisely to the issue of reasonable accommodation for [his] disability[,]" and that, "[o]ther than requiring more time than a non-disabled student," he supposedly was "qualified." Pl. Opp. at 17. However, Plaintiff's argument blithely ignores the fact that the College initially accorded Plaintiff *seven months* of uninterrupted study for the Step 1 exam and, when Plaintiff asked for additional time because he believed he "was progressing too slowly," the College responded by according him almost another month to prepare for the exam. SAC ¶¶ 134, 135, 143-144. Thus, even though Plaintiff does not allege that he followed the College's procedures for seeking accommodations based on his alleged disability (and, in fact, Plaintiff never did so), he cannot dispute that the College effectively granted him at least two accommodations, and that the lengthy preparation time periods the College accorded him

---

[4] In his opposition, Plaintiff refers to an unidentified "proposed amended complaint" under which "the claim lies under § 1983." Pl. Opp. at 19. As set forth in Point VI below, there is no valid basis for permitting Plaintiff to file a fourth pleading. Further, even if there were, Plaintiff has failed to demonstrate that any such claim would be timely.

11

still were not sufficient for Plaintiff to be "confident that [he] would pass the exam." SAC ¶ 145. In short, despite Plaintiff's conclusory assertion to the contrary, Plaintiff's own allegations in the SAC demonstrate he was not a "qualified" individual with a disability.[5]

Second, Defendants also demonstrated that the SAC pleads *no* facts demonstrating causation. Defs.' Mem. at 19. Indeed, it cannot reasonably be inferred from the SAC that Plaintiff's disability had *anything* to do with the College's decision to dismiss Plaintiff from the program, much less that Plaintiff's disability was the "but-for" cause of the College's decision (which, as Plaintiff concedes, is the appropriate causation standard (Pl. Opp. at 17)). Rather, as Defendants also showed, Plaintiff's *own* allegations demonstrate that his dismissal resulted solely from his failure to comply with one of the conditions for readmission set forth in the April 4th Decision: to take the Step 1 exam by the (extended) deadline the College had provided. As Defendants argued in their initial brief, this "obvious alternative explanation" for the matters alleged in the SAC "is much more compelling than Plaintiff's conclusory allegations of discrimination," and for this additional reason, "discrimination is not a plausible conclusion." Defs.' Mem. at 19-20, quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 682 (2009).

Defendants also demonstrated that Plaintiff fails to plausibly allege retaliation claims against SUNY Downstate under the Rehabilitation Act and ADA, because (i) he failed to allege any valid "protected activity," and (ii) he failed to plausibly allege that any protected activity was the "but-for" cause of the adverse action about which he complains. Defs.' Mem. at 21-22. In response, Plaintiff attempts to tack away from his allegations that Defendants supposedly retaliated against him because he made critical comments regarding the "new" College curriculum "as part

---

[5] Plaintiff also tries to change the subject, by asserting that he "repeatedly requested some form of accommodation with respect to the group activities that hampered [his] learning." Pl. Opp. at 18. But, again, Plaintiff does not allege that he followed the College's procedures for seeking an accommodation based on his alleged disability (and, in fact, Plaintiff never did so), but, even if he had, the statute of limitations with respect to any claim that the College unreasonably denied Plaintiff's purported requests for accommodations had long passed by the time Plaintiff brought this action on January 31, 2020. Defs.' Mem. at 8.

of a mandatory survey." SAC ¶¶ 199-202. Now, Plaintiff contends that his retaliation claims against the College "arise from [his] dismissal after telling the defendants how difficult [he] was finding it to learn under the new curriculum, and seeking accommodations." Pl. Opp. at 18-19. However, any retaliation claims based on the College's failure to accommodate any of Plaintiff's alleged requests for accommodations are time-barred. Defs.' Mem. at 8.[6]

Moreover, Plaintiff wholly fails to respond to Defendants' showing that his retaliation claims also should be dismissed because Plaintiff does not plausibly allege that any supposed protected activity on Plaintiff's part was the "but-for" cause of the College's decision to dismiss Plaintiff from the program. Defs.' Mem. at 21-22. To the contrary, as stated above, Plaintiff's own allegations demonstrate that his dismissal resulted from his failure to comply with one of the conditions for readmission set forth in the April 4th Decision: to take the Step 1 exam by the extended deadline the College had provided. In short, Plaintiff's discrimination and retaliation claims should be dismissed against all Defendants.

## V. THE SAC FAILS TO ALLEGE UNLAWFUL DISCRIMINATION OR RETALIATION UNDER STATE OR CITY LAW.

As demonstrated in Defendants' moving brief, under *both* the SHRL and CHRL, a plaintiff must allege facts supporting a minimal inference that the defendants' conduct was motivated by the plaintiff's alleged disability. Defs.' Mem. at 24, 25. Plaintiff's opposition does not even attempt to rebut Defendants' showing that Plaintiff has failed to plausibly allege that his dismissal from the College was motivated in any way by Plaintiff's ADHD. For this reason alone, Plaintiff's SHRL and CHRL claims should be dismissed against all Defendants.

---

[6] "Each failure to accommodate a request for accommodations is a discrete act for statute of limitations purposes." Defs.' Mem. at 8 (quoting *Kornmann v. City of New York Bus. Integrity Comm'n*, 467 F. Supp. 3d 54, 61 (E.D.N.Y. 2020) (citing *Gomez v. New York City Police Dep't*, 191 F. Supp. 3d 293, 302 (S.D.N.Y. 2016))). Because all of Plaintiff's requests for accommodations alleged in the SAC, as well as any alleged failure to accommodate those requests, took place long before January 31, 2017 (SAC ¶¶ 82, 123, 194-198), any claim based on the denial of such requests is untimely.

13

## VI. PLAINTIFF'S COMMON LAW CLAIMS FAIL TO STATE A CLAIM FOR RELIEF.

Plaintiff's opposition fails to rebut Defendants' showing that, even assuming any of his common law claims were timely brought (which they were not), they nonetheless fail to state a claim for relief. First, although Plaintiff asserts that his "claim for breach of contract does not arise from any claim of educational malpractice, but from various breaches of specific terms in the student handbook, including [his] expulsion" (Pl. Opp. at 21), Plaintiff cannot overcome governing law Defendants cited that (i) any breach of contract claim against SUNY Downstate and any of the Individual Defendants sued in their official capacity is barred under the Eleventh Amendment; and (ii) a breach of contract claim cannot survive against any of Individual Defendants because they were not and are not a party to the Student Handbook. Defs.' Mem. at 27, citing *Okoh v. Sullivan*, No. 10-cv-2547 (SAS), 2011 WL 672420, at *4 (S.D.N.Y. Feb. 24, 2011), *aff'd,* 441 Fed. App'x 813 (2d Cir. 2011).

Further, Plaintiff fails even to address Defendants' showing that his "breach of privacy," defamation and tortious interference claims fail to allege the necessary elements of such claims, and therefore should be dismissed. Defs.' Mem. at 27-28. These claims should therefore be deemed abandoned. *See, e.g., N.Y.S. Court Clerks Assoc. v. Unified Court System of the State of N.Y.*, 25 F. Supp. 3d 459, 469 (S.D.N.Y. 2014) ("It is well settled in the Second Circuit that 'a plaintiff's failure to respond to contentions raised in a motion to dismiss claims constitute an abandonment of those claims.'") (quoting *McLeod v. Verizon N.Y., Inc.,* 995 F. Supp. 2d 134, 143 (E.D.N.Y. 2014)).[7]

---

[7] In an attempted sleight-of-hand, Plaintiff attempts to re-characterize the claim he twice refers to (at pages 3 and 45 of the SAC) as a "Negligence" claim as a "negligent misrepresentation" claim subject to a six-year statute of limitations instead of a three-year limitations period. Pl Opp. at 15-16. Even putting aside this impropriety, the SAC does not allege the elements of any such negligent misrepresentation claim and, even if it did, Plaintiff does not, and cannot, legitimately allege how he took any action in reliance on defendant Miller's alleged misrepresentation. Thus, Plaintiff's attempt to transform a claim he twice identified in the SAC as a "negligence" claim into one for negligent misrepresentation should be rejected.

## VII. PLAINTIFF SHOULD NOT BE PERMITTED TO REPLEAD HIS CLAIMS.

Plaintiff's opposition repeatedly refers to a proposed amended complaint. Pl. Opp. at 14, 15, 19. However, any attempt to replead should be denied because Plaintiff failed to move for leave to amend under Rule 15 and append a proposed third amended complaint, or otherwise inform the Court and Defendants what allegations would be pleaded in support of his claims. *See, e.g., Krevat v. Burgers To Go, Inc.*, No. 13-cv-6258 (JS) (AKT), 2015 WL 1412707, at *5 (E.D.N.Y. Mar. 23, 2015) (denying leave to amend set forth in the plaintiff's opposition brief, stating that "numerous courts have held that a bare request to amend a pleading contained in a brief, which does not also attach the proposed amended pleading, is improper under Fed. R. Civ. P. 15.") (citation omitted).

Further, because Plaintiff already has had three chances to attempt to assert viable claims in this matter, but has failed to do so, he should be denied any further opportunity to amend his complaint. *See Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008) (holding that motions to amend generally should be denied in "instances of . . . repeated failure to cure deficiencies by amendments previously allowed . . . ."); *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (same); *Fekete v. County of Chenango*, 303 Fed. App'x 932, 933 (2d Cir. 2008) (upholding dismissal of Section 1983 claim with prejudice because the *pro se* plaintiffs were afforded two opportunities to amend their complaint).

Defendants therefore respectfully request that the Court dismiss the SAC in all respects and with prejudice.

Dated: New York, New York
      October 20, 2021

    **LETITIA JAMES**
    Attorney General
    State of New York
    *Attorney for Defendants*
By: /s/ Mark E. Klein
    Mark E. Klein
    28 Liberty Street
    New York, New York 10005
    (212) 416-8663