UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
JAN-MICHAEL RIVES,

               Plaintiff,

           v.                         **MEMORANDUM AND ORDER**

SUNY DOWNSTATE COLLEGE OF         20-CV-621 (RPK) (LB)
MEDICINE, LISA MERLIN, ANDREW
ADLER, ROBIN OVITSH, JEANNE
MACRAE, CARLOS PATO, JOSEPH
MERLINO, JEFFREY PUTMAN,
SOPHIE CHRISTOFOROU, RICCARDO
BIANCHI, F. CHARLES BRUNICARDI,
and SCOTT MILLER,

               Defendants.
----------------------------------------------------------x

RACHEL P. KOVNER, United States District Judge:

    *Pro se* plaintiff Jan-Michael Rives filed suit against SUNY Downstate College of Medicine, Andrew Adler, Riccardo Bianchi, F. Charles Brunicardi, Sophie Christoforou, Scott Miller, Jeanne Macrae, Lisa Merlin, Joseph Merlino, Robin Ovitsh, Carlos Pato, and Jeffrey Putman. Plaintiff brings claims for constitutional violations under 42 U.S.C. § 1983, as well as claims under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, Section 504 of the Rehabilitation Act, 29 U.S.C. § 701 *et seq.*, Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.*, and a variety of state laws.

    This order addresses defendants' motion under Federal Rule of Civil Procedure 12(b)(1) to dismiss based on sovereign immunity plaintiff's claims under Section 1983 and state law against certain defendants. As explained below, sovereign immunity prevents plaintiff from proceeding under Section 1983 and state law against (i) SUNY Downstate College of Medicine; (ii) any individual defendants sued in their official capacities for money damages; and (iii) any individual

1

defendants sued in their official capacities for injunctive relief under state law. Plaintiff's Section 1981 claim is also dismissed as withdrawn.

The Court reserves judgment on defendants' motion under Federal Rule of Civil Procedure 12(b)(6) to dismiss plaintiff's remaining claims, in order to permit further briefing. Within thirty days, plaintiff is directed to show cause why his Section 1983 procedural-due-process and Takings-Clause claims should not be dismissed for failure to state a claim based on the grounds set forth below.

## BACKGROUND

The following facts are taken from the second amended complaint and are assumed true for purposes of this order.

From August 2014 to March 2016, plaintiff was a medical student at SUNY Downstate College of Medicine. Second Am. Compl. ¶ 6 (Dkt. #17) ("SAC"). Plaintiff suffers from ADHD. *Id.* ¶¶ 128, 192.

SUNY Downstate's four-year medical program is split into two parts. *Id.* ¶ 20. For the first eighteen months, students do pre-clinical work. *Ibid.* The pre-clinical phase consists of six "Units," which are essentially different courses. *Id.* ¶ 21. Each Unit includes both lecture and group-learning components. *Id.* ¶¶ 22-24. At the end of each Unit, students receive a grade. *Id.* ¶¶ 25-26. In addition to the six Units, the pre-clinical phase includes two additional testing periods known as "Gateways." *Id.* ¶¶ 21, 30. Each of the two Gateways includes an "Einstein encounter," which is a simulated interaction between the student and an actor playing the role of patient. *Id.* ¶ 32. If a student earns an Identified Deficiency ("ID") in any one of six competencies, that student fails the Unit or Gateway. *Id.* ¶ 27. If a student fails a Unit or Gateway, he or she has an opportunity to "remediate" the course. *See, e.g., id.* ¶¶ 46, 59, 75, 109, 115.

Under SUNY's 2015-16 Student Handbook, the school may dismiss students for:

a) Deficiency in more than one Unit in the first year (Units 1-4) and/or Gateway;
b) Deficiency in more than one Unit during the Foundations Years (Units 1-6) and/or Gateway;
c) Deficiency in the same competency in two or more Units; . . .
f) Failure of a Gateway and failure of the remediation of the Gateway; [or]
g) Unprofessional behavior, clinical incompetence or failure to make satisfactory progress toward graduation within the published timeframe.

*Id.* ¶ 115.

### A. Plaintiff's Failures of Gateway 1 and Unit 6

Plaintiff passed his first year, *id.* ¶ 44, but was notified in 2015 that he "had failed Gateway 1 due to an ID in the domain of 'Interpersonal and Communication Skills'" as a result of his performance in the Einstein encounter, *id.* ¶ 45. Plaintiff was allowed to remediate his failure and did so successfully. *Id.* ¶ 59.

After failing Gateway 1, plaintiff requested accommodations from school officials on several occasions. In particular, plaintiff requested to be excused from some group-learning activities. *Id.* ¶¶ 83, 95. School officials did not grant that accommodation. *Id.* ¶¶ 83, 95, 98-102.

On January 15, 2016, plaintiff received an email from Riccardo Bianchi, Medical Competency Director and Associate Dean for Foundations of Medicine, stating that he had one unexcused absence for Unit 6. *Id.* ¶¶ 9, 103. Bianchi stated that another unexcused absence would lead to an automatic ID in Medical Professionalism—which would result in a failure of Unit 6. *Id.* ¶ 103. By the time plaintiff received the email, he had already accumulated a second unexcused absence. *Ibid.* Later, plaintiff received an email informing him that he failed Unit 6 due to an ID in Medical Professionalism. *Id.* ¶ 108.

Following his Unit 6 failure, plaintiff met with the Professional Assessment Committee ("PAC") to begin the process of remediating his failure. *Id.* ¶¶ 61, 109. He told the PAC that he

was struggling because of the group-learning portion of the Units. *Id.* ¶ 110. PAC member Madiha Akhtar told plaintiff that she "ha[d] a problem" with plaintiff's inability to learn in a group setting. *Id.* ¶¶ 110, 213. In the end, the PAC assigned Joseph Merlino, the Vice President for Faculty Affairs and Professional Development, to oversee plaintiff's remediation. *Id.* ¶¶ 17, 110.

### B. Failure of Gateway 2 and Dismissal

On March 10, 2016, defendant Sophie Christoforou, the Associate Dean for Student & Curricular Affairs, called plaintiff to inform him that he had failed Gateway 2 due to IDs in Patient Care and Interpersonal and Communication Skills. *Id.* ¶¶ 13, 112, 116. As a result, Christoforou explained, the Academic Progress Committee ("APC") had convened and dismissed plaintiff from the school, effective immediately. *Id.* ¶ 112.

### C. Dismissal Reversed, Subject to Certain Conditions

Plaintiff appealed this decision to the Student Appeals Committee and explained that his ADHD caused his struggles with the curriculum. *Id.* ¶ 128. Plaintiff's appeal was successful, and he was placed on medical leave for one year. *Id.* ¶ 129. To be readmitted following his medical leave, the Student Appeals Committee required plaintiff to meet two conditions. *Id.* ¶¶ 137, 141. First, he had to regularly meet with a psychologist. *Id.* ¶¶ 137, 141. Second, he had to take the Step 1 exam, which is a standardized exam administered by the National Board of Medical Examiners ("NBME"). *See id.* ¶¶ 91, 146-47; Pl.'s Mem. of L. in Opp'n to Mot. to Dismiss 6 (explaining that plaintiff would need to take the board exam by October 31, 2016) (Dkt. #63) ("Pl.'s Opp'n"). If plaintiff failed the Step 1 exam, the letter setting out his conditions for readmission explained, he would not be readmitted. *See* SAC ¶¶ 146-47; Pl.'s Opp'n 6.

### D. Plaintiff's Experience on Medical Leave

While studying for the Step 1 exam, plaintiff became worried that he was not prepared to take the test on October 31, 2016, SAC ¶¶ 134, 141, so he met with Merlino and Christoforou to seek an extension, *id.* ¶ 135. Christoforou stated that "other students did not get six months to study for Step 1," but agreed to offer an extension until November 2016, subject to approval by the Student Appeals Committee. *Id.* ¶ 136. The Student Appeals Committee eventually approved plaintiff rescheduling the Step 1 exam for November 23, 2016. *Id.* ¶ 144.

The day before his November Step 1 exam, plaintiff emailed Christoforou to request a further extension because he was not confident that he would pass the exam. *Id.* ¶ 145. Christoforou refused and stated that if he did not take the exam, he would have to meet with Student Appeals Committee again. *Ibid.* Plaintiff then called Merlino to discuss an extension, but Merlino instructed him to take the exam anyway stating, "if you fail, you fail." *Id.* ¶ 146.

Plaintiff, however, believed he could not fail the Step 1 exam according to the conditions of his readmission. *Id.* ¶ 147. He emailed Christoforou and defendant Jeffrey Putman, the Vice President for Student Affairs and Dean of Students, to clarify if he only needed to take the Step 1 exam or if he had to pass the exam. *Id.* ¶¶ 19, 147. He did not receive a reply. *Id.* ¶ 147. Plaintiff then rescheduled the exam and emailed Christoforou and Putman to inform them. *Id.* ¶ 148.

### E. Plaintiff's Final Dismissal

Plaintiff met with the Student Appeals Committee on December 15, 2016. *Id.* ¶ 149. At the meeting, plaintiff was criticized for rescheduling the exam for a second time. *Id.* ¶ 151.

Defendant Scott Miller, chairman of the Student Appeals Committee, stated that plaintiff had only been required to take—not pass—the Step 1 exam by the deadline to be eligible for readmission. *Id.* ¶¶ 14, 154; Dkt. #46 at 1. Plaintiff believed Miller's claim and apologized to the

5

Committee. SAC ¶ 154. But plaintiff later found a letter from the Student Appeals Committee outlining the terms of his readmission that stated, "should you fail either Step 1 or any part of the Gateway 2 re-examinations, you will be considered for dismissal from the College of Medicine." *Id.* ¶ 165.

Hours after the meeting ended, plaintiff received an email from NBME informing him that his rescheduled Step 1 exam had been cancelled. *Id.* ¶ 156. The next day, December 16, 2016, plaintiff received official word that he would not be readmitted to SUNY Downstate. *Id.* ¶ 157.

### F. Plaintiff's Appeal to the Dean

Although he had exhausted his official options, plaintiff informally appealed his dismissal to defendant Carlo Pato, then-Dean of the College of Medicine. *Id.* ¶¶ 10, 159. Plaintiff believed the Dean could overrule the Student Appeals Committee's decision because "[a]ccording to the Student Handbook, the decision of the Dean is final." *Id.* ¶ 164. During their meeting, Dean Pato stated that plaintiff would have been in a better position if he had taken the Step 1 exam and failed. *Id.* ¶ 160. Plaintiff argued that he should not have been dismissed from the school in the first place. *Id.* ¶ 161. Pato asked if there were any mitigating circumstances he should consider. *Id.* ¶ 162. Plaintiff informed him that he "had indeed faced some depression." *Ibid.* Pato stated that he would make some inquiries before getting back to plaintiff. *Ibid.* Pato emailed plaintiff around January 31, 2017 and told him that he had found no basis to reverse plaintiff's dismissal. *Id.* ¶¶ 163-64.

Plaintiff believes that he cannot enroll in any other MD programs in the country because SUNY Downstate would inform any MD program plaintiff applies to that he is not a student in good standing. *Id.* ¶ 167.

### G. Procedural History

Plaintiff filed his first complaint in federal court on January 31, 2020. *See* Compl. (Dkt. #1). He filed an amended complaint on January 14, 2021. *See* Am. Compl. (Dkt. #15). He filed the SAC, which is the operative complaint, on February 9, 2021. *See* SAC.

Defendants filed a motion to dismiss on July 30, 2021. *See* Mot. to Dismiss (Dkt. #61).

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) permits a party to move to dismiss a complaint for "lack of subject-matter jurisdiction." "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Lyons v. Litton Loan Servicing LP*, 158 F. Supp. 3d 211, 218 (S.D.N.Y. 2016) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). When considering a motion to dismiss under Rule 12(b)(1), the court takes as true the factual allegations in the complaint but does not draw inferences favorable to the party asserting jurisdiction. *See J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004).

Federal Rule of Civil Procedure 12(b)(6) directs a court to dismiss a complaint that "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The facial "plausibility standard is not akin to a 'probability requirement,'" but it requires a plaintiff to allege sufficient facts to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ibid*. (quoting *Twombly*, 550 U.S. at 557). "A well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof [of the facts alleged] is

improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (quotations omitted).

The complaint of a *pro se* plaintiff must be "liberally construed, and . . . however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citations and internal quotation marks omitted).

**DISCUSSION**

For the reasons stated below, I grant in part and deny in part defendants' motion under Rule 12(b)(1) to dismiss certain claims under Section 1983 and state law based on sovereign immunity. I also dismiss plaintiff's claims under 42 U.S.C. § 1981 because plaintiff has withdrawn those claims. See Pl.'s Opp'n 14. Decision is deferred on defendants' motion to dismiss plaintiff's remaining claims under Rule 12(b)(6), to permit additional briefing as described below.

**I.   Defendants' Motion To Dismiss Certain Claims Based On Sovereign Immunity Is Granted In Part And Denied In Part**

Defendants move under Rule 12(b)(1) to dismiss plaintiff's state-law and Section 1983 claims against SUNY Downstate and against the individual defendants sued in their official capacities. That motion is granted in part and denied in part.

**A. Plaintiff's claims against SUNY Downstate under Section 1983 and state law are barred by sovereign immunity.**

Sovereign immunity bars plaintiff's claims against SUNY Downstate under Section 1983 and state law. As a general matter, state governments may not be sued in federal courts by private parties "unless they have waived their Eleventh Amendment immunity" or unless Congress has abrogated it. *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) (citations and internal quotation marks omitted); *see Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 253-54 (2011). "New

York has not waived its [sovereign] immunity." *Li v. Lorenzo*, 712 F. App'x 21, 22 (2d Cir. 2017) (citing *Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 38-40 (2d Cir. 1977)). And "[f]or Eleventh Amendment purposes, SUNY 'is an integral part of the government of the State [of New York] and when it is sued the State is the real party.'" *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001) (quoting *Dube v. State Univ. of New York*, 900 F.2d 587, 594 (2d Cir. 1990)).

Plaintiff argues that he may nevertheless sue SUNY *Downstate* without running afoul of sovereign immunity. Pl.'s Opp'n 2 (relying on *Leitner v. Westchester Cmty. Coll.*, 779 F.3d 130 (2d Cir. 2015)). But SUNY Downstate is simply "a subdivision of SUNY" with no legally cognizable separate existence. *Harrison v. State Univ. of New York Downstate Med. Ctr.*, No. 16-CV-1101 (RRM) (CLP), 2018 WL 4055278, at *7 (E.D.N.Y. July 6, 2018), *report and recommendation adopted*, 2018 WL 4054868 (E.D.N.Y. Aug. 24, 2018); *see also Ideyi v. State Univ. of New York Downstate Med. Ctr.*, No. 09-CV-1490 (ENV) (RML), 2010 WL 3938411, at *4 (E.D.N.Y. Sept. 30, 2010); N.Y. Educ. Law. §§ 351, 352(3). Accordingly, plaintiff's claims under Section 1983 and state-law against SUNY Downstate cannot proceed.

**B. Plaintiff's claims for money damages under Section 1983 and state law against individual defendants in their official capacity are likewise barred by sovereign immunity.**

Sovereign immunity also bars plaintiff's claims for damages against the individual SUNY officials sued in their official capacities under Section 1983 and state law. Sovereign immunity extends to "actions for the recovery of money from the state" against "state agents." *Leitner*, 779 F.3d at 134 (citing *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997); *Hans v. Louisiana*, 134 U.S. 1, 15 (1890)). A lawsuit brought against officials of a government entity in their official capacities is "in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *see Garcia*, 280 F.3d at 107 (2d Cir. 2001)

(quoting *Dube*, 900 F.2d at 594). Accordingly, because plaintiff's claims for damages under Section 1983 and state law against SUNY Downstate officials in their official capacities are effectively "actions for the recovery of money from the state," *Leitner*, 779 F.3d at 134, sovereign immunity bars them.

### C. Plaintiff's federal claims for injunctive relief against individual defendants in their official capacity can proceed under the doctrine of *Ex parte Young*.

Plaintiff's claims for injunctive relief, however, require a different analysis. Plaintiff argues that he can proceed with a suit for injunctive relief under both Section 1983 and state law against one individual in his official capacity—Dean Brunicardi—based on *Ex parte Young*, 209 U.S. 123 (1908). *See* Pl's Opp'n 1. *Ex parte Young* allows a plaintiff to "avoid the Eleventh Amendment bar to suit and proceed against individual state officers, as opposed to the state, in their official capacities, provided that his complaint (a) 'alleges an ongoing violation of federal law' and (b) 'seeks relief properly characterized as prospective.'" *In re Deposit Ins. Agency*, 482 F.3d 612, 618 (2d Cir. 2007) (first quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002), then quoting *In re Dairy Mart Convenience Stores, Inc.*, 411 F.3d 367, 372 (2d Cir. 2005)).

To begin with, because *Ex parte Young* requires a showing of "an ongoing violation of *federal* law," *ibid.* (emphasis added), the doctrine simply does not apply to plaintiff's state-law claims. *See Vega v. Semple*, 963 F.3d 259, 283 (2d Cir. 2020) (citing *Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 106 (1984)). Plaintiff's claims seeking injunctive relief against the Dean based on violations of state law are thus barred by sovereign immunity.

But plaintiff's federal claims for injunctive relief against the Dean can proceed. Plaintiff alleges that he was dismissed from SUNY Downstate in violation of his constitutional rights, and seeks an injunction ordering Dean Brunicardi to "reinstate [plaintiff] as a student," "restore all

10

[his] credits and status as a student in good standing," "sponsor [his] sitting for the Step 1 exam," and "remove all impediments to re-enrollment in or transfer to accredited MD programs in the United States." SAC at 48 ¶ D. Because the "detrimental impact" of plaintiff's allegedly unconstitutional dismissal "continues into the present," *Marino v. City Univ. of New York*, 18 F. Supp. 3d 320, 333 (E.D.N.Y. 2014), the alleged violation of federal law is "ongoing" for purposes of *Ex parte Young*. *Verizon*, 535 U.S. at 645. And the relief sought—reinstatement by the Dean— is prospective in nature. *See, e.g.*, *State Emps. Bargaining Agent Coal. v. Rowland,* 494 F.3d 71, 96 (2d Cir. 2007) ("Every Circuit to have considered the issue, including our own, has held that claims for reinstatement to previous employment satisfy the *Ex parte Young* exception to the Eleventh Amendment's sovereign immunity bar.") (collecting cases). Accordingly, *Ex parte Young* permits plaintiff to circumvent the bar of sovereign immunity with respect to plaintiff's federal claims for injunctive relief against Dean Brunicardi.

## II. Order to Show Cause

The Court defers decision on defendants' motion to dismiss plaintiff's remaining claims under Federal Rule of Procedure 12(b)(6), in order to allow further briefing as described below.

### A. Procedural Due Process

Plaintiff is directed to show cause within thirty days why his procedural-due-process claim under Section 1983 should not be dismissed for failure to state a claim on the ground that plaintiff received constitutionally sufficient process.

Procedural due process rights are violated when an individual "is deprived of a protected liberty or property interest without adequate process." *Tooly v. Schwaller*, 919 F.3d 165, 172 (2d Cir. 2019) (citing *Ciambriello v. County of Nassau*, 292 F.3d 307, 313 (2d Cir. 2002)). Here, plaintiff appears to have adequately pleaded that he was deprived of a protected property interest.

11

New York law recognizes an "'implied contract' between [a college or university] and its students" requiring the "academic institution [to] act in good faith in its dealing with its students." *Olsson v. Bd. of Higher Educ.*, 402 N.E.2d 1150, 1153 (N.Y. 1980); *see Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 93 (2d Cir. 2011). That right is a property interest that receives constitutional protections. *See Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991); *Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis.*, 804 F.3d 178, 192 n.4 (2d Cir. 2015) (citing *Branum*, 927 F.2d at 705). Nevertheless, "[i]n the context of an academic dismissal a student is afforded the procedural process required by the Fourteenth Amendment where (1) the school has 'fully informed [the student] of the faculty's dissatisfaction with [the student's] progress and the danger that this posed to timely graduation and continued enrollment,' and (2) '[t]he ultimate decision to dismiss [the student] was careful and deliberate.'" *Dean*, 804 F.3d at 191 (quoting *Bd. of Curators of Univ. of Mo. v. Horowitz*, 435 U.S. 78, 85 (1978)). Plaintiff is directed to show cause why, under the facts set out in his complaint, he did not receive constitutionally sufficient process for any deprivation of property interests in this case.

**B. Takings Clause**

Plaintiff shall also show cause within thirty days why his claim under Section 1983 for a violation of the Takings Clause should not be dismissed.

The Takings Clause states that private property shall not be "taken for public use, without just compensation." U.S. Const. amend. V. As stated earlier, plaintiff has a property interest in the implied contract between him and SUNY. *See* p. 12-13, *supra*. But that implied contract is subject to terms "contained in the university's bulletins, circulars, and regulations made available to the student." *Papelino*, 633 F.3d at 93 (quoting *Vought v. Teachers Coll., Columbia Univ.*, 127 A.D.2d 654, 654 (N.Y. App. 1987)). Students are required to satisfy the terms of the implied

12

contract by complying with the University's procedures. *Ibid*. (citing *Gally v. Columbia Univ.*, 22 F. Supp. 2d 199, 206 (S.D.N.Y. 1998)). The 2015-16 Student Handbook states that "deficiency in more than one Unit during the Foundations Years (Units 1-6) and/or Gateway" or "clinical incompetence" could lead to dismissal. SAC ¶ 114. Plaintiff appears to have failed a Unit and two Gateways. *Id*. ¶¶ 45, 108, 116. Accordingly, plaintiff is directed to show cause why he suffered an unconstitutional taking.

## CONCLUSION

Plaintiff's Section 1983 and state-law claims against SUNY Downstate are dismissed for lack of subject matter jurisdiction. So too are plaintiff's claims for money damages and for injunctive relief based on state law against individual defendants sued in their official capacity. Plaintiff's Section 1981 claim is dismissed as withdrawn. Decision is deferred on the remainder of defendants' motion to dismiss. Within thirty days of the date of this order, plaintiff is ordered to show cause why his Section 1983 claims against individual defendants for procedural-due-process and Takings-Clause violations should not be dismissed for failure to state a claim on the grounds set out above.

SO ORDERED.

*/s/ Rachel Kovner*  
RACHEL P. KOVNER  
United States District Judge

Dated: September 30, 2022
      Brooklyn, New York