RECEIVED IN PRO SE
FEB 23, 2023 @ 6:06 PM
VIA BOX.COM

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JAN-MICHAEL RIVES<br><br>Plaintiff,<br><br>—versus—<br><br>SUNY DOWNSTATE COLLEGE OF MEDICINE;<br>ANDREW ADLER, M.D. *individually*;<br>RICCARDO BIANCHI *individually*;<br>F. CHARLES BRUNICARDI, M.D. *ex officio*;<br>SOPHIE CHRISTOFOROU *individually*;<br>JEANNE MacRAE, M.D. *individually*;<br>LISA MERLIN, M.D. *individually*;<br>JOSEPH MERLINO, M.D. *individually*;<br>SCOTT MILLER *individually*;<br>ROBIN OVITSH, M.D. *individually*;<br>CARLOS PATO, M.D. *individually*;<br>AND JEFFREY PUTMAN *individually*,<br><br>Defendants. | # 20 CV – 621<br><br>*Before*<br><br>Rachel Peter Kovner — *Judge*<br>Lois Bloom — *Magistrate Judge* |

**Plaintiff's Sur-reply Brief**

**<u>In Response to an Order to Show Cause</u>**

# TABLE OF AUTHORITIES

**CASES**

AAR, Inc. v. Nuñez, 408 F.App'x 828 (5th Cir. 2011)..................................................4

Allen v. Cuomo, 100 F.3d 253 (2nd Cir. 1996)................................................11, 12

Attallah v. N.Y. Coll. of Osteopathic Med.
643 F.App'x 7 (2nd Cir. 2016) (summary order)..................................................5

Bd. of Curators, University of Missouri v. Horowitz
435 U.S. 78 (1978) ..................................................................................7

Cole v. La Grange, 113 U.S. 1 (1885) ................................................................10

Cornelius v. Macy's Retail Holdings, Inc., No. 18-CV-678
2019 US Dist. LEXIS 131907 (W.D.N.Y. 2019) ........................................................6

Dean v. Univ. at Buffalo Sch. of Med. and Biomed. Sci's
804 F.3rd 178 (2nd Cir. 2015) ..................................................................6, 7

Domino Media, Inc. v. Kranis, 9 F.Supp 2nd 374 (S.D.N.Y. 1998) ..............................4

Eastern Enterprises v. Apfel, 524 U.S. 498 (1998)..............................................11

Ezekwo v. New York City Health & Hosps. Corp, 940 F.2nd 775 (2nd Cir. 1991)............9

Falcon v. City Univ. of N.Y., 2016 US Dist. LEXIS 92396 (E.D.N.Y. 2016)....................4

Hellenic Am. Neighborhood Action Comm. v. City of New York
101 F.3d 877 (2nd Cir. 1996). .................................................................8, 9

Horne v. Department of Agriculture, 576 U.S. 351 (2015)................................11, 12

Lucas v. South Carolina Coastal Council, 505 U.S. 1003 (1992)..............................12

Lynch v. United States, 292 U.S. 571 (1934) ....................................................11

Oladokun v. Ryan, 2007 U.S. Dist. LEXIS 78768 (S.D.N.Y. 2007).............................9

# Table of Authorities

Papelino v. Albany College of Pharm. of Union Univ.
633 F.3rd 81 (2nd Cir. 2011)..................................................................................12

Patterson v. Coughlin, 761 F.2nd 886, 893 (2nd Cir. 1985)........................................7

Rex v. Chancellor, Masters, and Scholars of Univ. of Cambridge
1 Strange 557; 93 Eng. Rep. 698, 704 (K.B. 1722)...................................................8

Rivera-Powell v. New York City Bd. of Elections
470 F.3rd 458 (2nd Cir. 2006) ...................................................................................9

Tahoe-Sierra Preservation Council, 535 U.S. 302 (2002).......................................12

Zinermon v. Burch, 494 U.S. 113 (1990)..................................................................8

## Statutes

42 U.S.C. § 1983 ...................................................................................................7, 9

N.Y. C.P.L.R. Article 78 ...........................................................................................8

## Rules

Fed. R. Civ. P. Rule 12(g)2........................................................................................4

Second Circuit Local Rule 32.1.1(b)(2) ....................................................................5

## Treatises

Richard A. Epstein, "The Federalism Decisions Of Justices Rehnquist
nd O'Connor: Is Half A Loaf Enough?" 58 Stan. L. Rev. 1793 (2006)................11

TABLE OF CONTENTS

PRELIMINARIES ..................................................................................................1

I. PROCEDURAL DUE PROCESS ....................................................................3

    A. Defendants Concede All My Arguments By Failing To Address Any Of Them. ..3

    B. Defendants' Own Procedural-Due-Process Arguments Fail...................................3

        1. Their account of my dismissal is incoherent.........................................................3

        2. The Student Appeals Committee's decisions are irrelevant ................................4

        3. Permitting a post-dismissal appeal did not cure the lack of notice. .....................4

        4. Nor could an Article 78 proceeding do so ...........................................................5

II. TAKINGS .............................................................................................................6

    A. Defendants Again Concede My Arguments By Failing To Address Them............6

    B. Defendants' Omnibus Argument Fails....................................................................7

        1. It is incomprehensible ...........................................................................................7

        2. The Takings Clause protects all private property, including contracts................7

        3. Direct appropriations are distinct from regulatory takings ..................................8

        4. If the argument is aimed at my regulatory-taking claim, it fails at the premise. .9

CONCLUSION...............................................................................................................10

# PRELIMINARIES

In its September 30th, 2022 Memorandum and Order ("Order"), this Court invited supplemental briefing on my procedural-due-process and Takings-Clause claims, directing me to show cause why they should not be dismissed on the grounds that (i) I received constitutionally adequate process for any property interest alleged and (ii) that the policy promulgated in the 2015-16 Student Handbook authorized dismissal of a student in my circumstances. I filed my brief on December 12th ("Response") (№ 81) and defendants filed their opposition on December 20th ("Reply") (№ 82).

The defendants' Reply could easily be mistaken for a second motion to dismiss. Rather than sticking to the grounds set out in the Court's Order, defendants repeat (down to the typos) all the arguments they previously offered against the claims in question, and sneak in a few new ones for good measure. *See* Reply §§ I.A, I.B, I.C *in part*, II *in part*. These arguments, which constitute the bulk of the Reply, are beyond the scope of the questions on which the Court ordered briefing and to which my Response was directed. "Generally, and for obvious reasons, a reply brief is limited to addressing matters presented by . . . the response brief, and is not the appropriate vehicle for presenting new arguments or legal theories to the court."[1] Moreover, because defendants have already made a Rule 12 motion, under Rule 12(g)2, they cannot advance new arguments for dismissal without filing an Answer. The Court must disregard or strike these portions of the Reply.[2]

Equally unwelcome is defendants' tepid effort to revive their argument (or rather, their conclusion) with respect to personal involvement, which they offered in their first memo-

---

[1] AAR, Inc. v. Nuñez, 408 F.App'x 828, 830 (5th Cir. 2011);
 *See also* Domino Media, Inc. v. Kranis, 9 F.Supp 2nd 374, n.82 (SDNY 1998) (collecting cases).
[2] *See* Falcon v. City Univ. of N.Y., 2016 US Dist. LEXIS 92396, *38-39 (EDNY 2016) (collecting cases).

1

randum of law, № 61 at 13, and which they quietly abandoned after I addressed it in my opposition brief, № 63 at 8. Even if they did not concede the point by omitting it from their reply a year-and-a-half-ago; even if they were now expanding on their first attempt, rather than making a still-broader, still-more conclusory assertion of insufficiency; even if it were actually *true*, and not merely counterfactual wish-thinking; it would be irrelevant to the current inquiry. The Court did not order supplemental briefing on the matter of personal involvement, and I will not discuss it here. The issue is far too complex and the law too unsettled (even post-*Tangreti*) to be treated in anything less than a full brief.

Finally, I would ask the Court to note defendants' *constant* inappropriate citation to unpublished Second Circuit decisions. Their opening brief and reply in support of the pending Motion to Dismiss (№os 61 and 64) together cited more than twenty such decisions, presenting each as if it were a binding precedential opinion.[3] Their latest brief quotes three more cases disposed of by summary order, again failing to denote any of them as such. *See* Reply at 3 (*D.S. v. City of Peekskill*; *Wantanabe Realty Corp*); *id.* at 7 (*Attallah v. N.Y. Coll. of Osteopathic Med.*). Of these, *Wantanabe* is especially poor form, as citation to pre-2007 summary orders is strictly verboten under Second Circuit Rule 32.1.1(b)(2). I urge the Court to disregard or strike the offending parts of defendants' briefs.

As for what *is* properly before the Court, defendants' argument that I received constitutionally adequate pre-deprivation process is on page six of their Reply. Their argument that I failed to state a claim under the Takings Clause is on page nine. As I show next, however, even these two pages are not well spent.

---

[3] The Court will recall that these same memoranda were also in flagrant violation of the District's and this Court's individual rules governing margin size. *See* Pl. Letters, №os 67, 70.

# ARGUMENT

## I. PROCEDURAL DUE PROCESS

### A. Defendants concede all my arguments by failing to address any of them.

In my brief responding to the Court's Order to Show Cause, I argued (i) that the College's procedures were inadequate as applied, because I was given no notice prior to my dismissal; (ii) that my dismissal could not have been the product of "careful and deliberate" decisionmaking, because it violated clearly-established constitutional law; and (iii) that if the College did not have a policy in place to ensure pre-dismissal notice, it would constitute a *per se* procedural-due-process violation. I also noted that the College only introduced such a policy last year, shortly after the first round of briefing in this case. Response at 7-10. Defendants fail to address these points in any way. Indeed, my Response is not cited once in their brief. The arguments should thus be deemed conceded for the purpose of the Motion.[4]

### B. Defendants' own procedural-due-process arguments fail.

*1. Their account of my dismissal is incoherent.*

Counsel studiously avoid any mention of defendants' March 10th, 2016 decision to dismiss me. It appears that for them, time itself begins on April 4th, when the Student Appeals Committee forced me into a medical leave of absence. Certainly, framing things this way solves some problems for counsel — they can pretend that defendants gave me prior notice, for one — but it does tend to confuse the analysis somewhat. For instance, the Court is asked to accept the paradox that "Plaintiff . . . was dismissed from medical school for failing to

---

[4] *See* Dean v. Univ. at Buffalo Sch. of Med. and Biomed. Sci's, 804 F.3rd 178, 187 (2nd Cir. 2015);
Cornelius v. Macy's Retail Holdings, Inc., No. 18-CV-678, 2019 US Dist. LEXIS 131907, at *2 (WDNY 2019) (citing *Dean*, and collecting cases).

satisfy the requirements of his readmission." Reply at 6. It goes without saying, a legal position that serves as its own *reductio* should be met with a degree of skepticism.

*2. The Student Appeals Committee's decisions are irrelevant.*

It is contended that the Appeals Committee's December 15th decision to deny me readmission "constitute[d] a 'careful and deliberate decision' for purposes of [my] procedural due process claim." As an initial matter, I doubt very much that a decision based entirely on the Appeals Committee's misreading of the conditions they themselves had approved can be called careful and deliberate. And it can hardly be suggested that I had advance notice if I *literally* asked the two individuals who wrote the letter setting out those conditions what would happen, and neither responded.

But the deeper issue is that, for the purposes of the procedural-due-process claim pressed in my Response, any actions the defendants took after my dismissal are simply irrelevant. (i) I was dismissed, "effective immediately," on March 10th, 2016. (ii) That dismissal was effected without prior notice. A claim has been stated. "Once a cause of action for a constitutional violation accrues, nothing that the state does subsequently can cut off the § 1983 claim."[5]

*3. Permitting a post-dismissal appeal did not cure the lack of notice.*

It is further contended that simply by permitting me to appeal my dismissal, defendants provided *more* process than the constitution requires. Reply at 6, citing *Dean* (2nd Cir. 2015). That case, however, is of no help to defendants. Dean received adequate notice prior to his dismissal.[6] As in *Horowitz*, any process the school provided by way of appeal afterwards

---

[5] Patterson v. Coughlin, 761 F.2nd 886, 893 (2nd Cir. 1985).
[6] Strictly speaking, the Court's discussion on this head was dictum, since it ruled that Dean had waived his PDP argument. ("were we to reach the merits of this issue, we would likely reject Dean's argument.")

4

was just gravy. My case is fundamentally different in that defendants provided no notice before dismissing me. By later allowing me to appeal, they merely offered something *other* than what the constitution requires. Not good enough.

It is certainly not true, as a general proposition, that permitting an administrative appeal will atone for a deprivation of property without due process.[7] Especially in the higher education context, where pre-deprivation notice is meant to allow a student to correct his deficiencies and avoid dismissal in the first place, a post-dismissal appeal will not undo the harm caused by lack of notice. The student will have failed and will have been dismissed as a consequence. On appeal, school authorities *may* grant him a "second chance," or they may not. Even if he is readmitted, the deficiencies on his record will keep him permanently under the gun – a single failure or negative evaluation, or anything at all, could trigger another dismissal. Thus, "the objection for want of notice can never be got over."[8]

*4. Nor could an Article 78 proceeding do so.*

It is contended that there was no violation of procedural due process because an Article 78 proceeding was available to address any deprivation. Reply at 7, citing *HANAC* (2nd Cir. 1996).[9] Defendants mistake the significance of *HANAC*, which explicitly contradicts their position. That case involved a *random, unauthorized* act by an individual, which no pre-deprivation process could hope to prevent. My dismissal, in contrast, was effected through established procedures. This is relevant because in evaluating whether the Due Process Clause was violated, courts must draw a line "between (a) claims based on established state

---

[7] Zinermon v. Burch, 494 U.S. 113, 132 (1990) ("In situations where the State feasibly can provide a predeprivation hearing before taking property, it generally must do so regardless of the adequacy of a postdeprivation tort remedy to compensate for the taking.")
[8] R. v. Chancellors Univ. of Cambridge, 1 Strange 557; 93 Eng. Rep. 698, 704 (K.B. 1722).
[9] Hellenic Am. Neighborhood Action Comm. v. City of New York, 101 F.3rd 877 (2nd Cir. 1996).

5

procedures and (b) claims based on random, unauthorized acts by state employees."[10] Cases like *Ezekwo*[11] and *Oladokun*[12] offer rare, instructive examples of the former. *HANAC* is one of countless examples of the latter.

*Attallah*, on the other hand, is completely inapposite (and, again, inappropriately cited). On a cursory reading, it is easy to miss the critical fact that Attallah was expelled from a *private* medical school and that the state defendants he sued under §1983 had no power to expel him.[13] In contrast, I was dismissed from a *state* school by state actors who "possessed the authority to effect 'the very deprivation complained of.' . . . Thus, the potential availability of a state law [remedy] does not bar this suit."[14]

## II. TAKINGS

### A. Defendants again concede my arguments by failing to address them.

My most straightforward Takings-Clause claim arises from defendants' material and total breach of contract in dismissing me from the College – a categorical, direct appropriation. With respect to the Court's suggestion that the 2015-16 Student Handbook ("the '15 Handbook") may have provided for expulsion of a student in my circumstances, I argued in my Response: (i) that the dismissal policy set out in the '15 Handbook was unconstitutionally vague or ambiguous, and therefore inoperative; (ii) that if it was operative, it must be read *contra proferentem*; (iii) that, so read, the policy did not allow for retroactive consideration of my Gateway 1 failure; and (iv) that the changes to the terms of the dismissal

---

[10] Rivera-Powell v. New York City Bd. of Elections, 470 F.3rd 458, 465 (2nd Cir. 2006) (quoting *HANAC*, 101 F.3rd at 880).
[11] Ezekwo v. New York City Health & Hosps. Corp, 940 F.2nd 775, 784 (2nd Cir. 1991) (medical resident deprived of property interest without notice).
[12] Oladokun v. Ryan, 2007 US Dist. LEXIS 78768, *18-19 (SDNY 2007) (rejecting argument that Article 78 offers adequate remedy for student dismissed from state college without notice).
[13] *See* Attallah v. N.Y. Coll. of Osteopathic Med., 643 F.App'x 7, n. 2 (2nd Cir. 2016) (summary order).
[14] *Ezekwo*, 940 F.2nd at 784 (quoting *Zinermon*, 494 U.S. at 138).

6

and attendance policies between the '14 and '15 Handbooks, if enforced, effected a regulatory taking. Response at 11-16. Once again, defendants do not reply to any of these points, so they should all be deemed conceded for the purpose of their Motion to Dismiss.[15]

**B. Defendant's omnibus argument fails.**

*1. It is incomprehensible.*

From the absence of section headings or other signposts, it appears that defendants mean to press a single argument against one or more of my takings claims. Unfortunately, they do not specify which ones. I will attempt to respond to what I *think* is being suggested.

Defendants begin by noting that the "complaint does not allege that [my] private property was taken for public use." This objection is self-defeating, of course. A taking that was *not* for public use would be unconstitutional on its face.[16] They continue: "This is a fundamental flaw because the property interests protected by the Takings Clause...are narrower in scope than those protected by procedural due process, and do not include entitlements." Reply at 8. I am at a loss to see what entitlements have to do with anything, or how they relate to the public use requirement, or frankly, how any of this leads into what defendants say next. I can only assume that some key sentences have been inadvertently omitted.

*2. The Takings Clause protects all private property, including contracts.*

The premises apparently having been established, defendants conclude that a distinction can be drawn between the Due Process Clause and the Takings Clause with respect to the domain of property interests they protect: "Thus, the fact that the implied contract between a college and its students may be subject to procedural due process protection under certain

---

[15] *See* n. 4, *supra*.
[16] Cole v. La Grange, 113 U.S. 1, 6 (1885) (state cannot take property "for any but a public object.")

7

circumstances does not mean that it is subject to Takings Clause protection as well." *Ibid.* This part of the argument is clear, at least. And clearly wrong.

The question of whether the Takings Clause extends to contracts was answered in the affirmative almost ninety years ago in *Lynch v. United States* (1934): "The Fifth Amendment commands that property be not taken without making just compensation. Valid contracts are property, whether the obligor be a private individual, a municipality, a State or the United States."[17] In recent years, the Supreme Court has expanded on that view. In *Horne v. Dep't of Agric.* (2015), for example, it stated emphatically that the Takings Clause "protects 'private property' without any distinction between different types."[18] There is thus no basis for the sort of distinction that defendants suggest.[19]

*3. Direct appropriations are distinct from regulatory takings.*

Defendants then turn abruptly to a discussion of regulatory takings. Reply at 8-9, quoting *Allen v. Cuomo* (2nd Cir. 1996).[20] It is not obvious whether they mean to continue their argument against the same direct-appropriation claim as before, or whether this represents a new argument directed against my regulatory-taking claim. Of course, one must always be careful to distinguish between the two types of claims. The Supreme Court's takings jurisprudence is something of a patchwork, and the case law applicable to one is generally inapplicable to the other.[21]

---

[17] Lynch v. United States, 292 U.S. 571, 579 (1934).
[18] Horne v. Department of Agriculture, 576 U.S. 351, 358 (2015).
[19] *But see* Eastern Enterprises v. Apfel, 524 U.S. 498, 557 (1998) (BREYER, J., dissenting).
[20] Allen v. Cuomo, 100 F.3rd 253, 262 (2nd Cir. 1996).
[21] *See generally* Richard A. Epstein, "The Federalism Decisions Of Justices Rehnquist And O'Connor: Is Half A Loaf Enough?" 58 Stan. L. Rev. 1793 (2006).

In *Horne*, for example, the Court distinguished an earlier case containing the sort of "investment-backed expectations" language found in *Allen* on the grounds that it "was about regulatory takings, not direct appropriations."[22] The Court concluded that, whatever a previous case "had to say about reasonable expectations with regard to regulations, people still do not expect their property, real or personal, to be actually occupied or taken away." Evidently, then, it is "inappropriate to treat cases involving [direct appropriations] as controlling precedents for the evaluation of a claim that there has been a 'regulatory taking,' and vice versa."[23]

*4. If the argument is aimed at my regulatory-taking claim, it fails at the premise.*

If the argument is instead directed against my regulatory-taking claim, it still fails, but for entirely different reasons. Defendants say that I "d[o] not fall into th[e] category [of individuals who invested in reliance on the state of affairs prior to the contested regulation.]" Why not? Because, they say, the '15 Handbook provided for dismissal of a student with a "deficiency in more than one Unit and/or Gateway." I must therefore have been "well aware that failing more than one Unit or Gateway could lead to [my] dismissal from medical school." Reply at 9.

Of course, the language in the '15 Handbook is different and rather more impenetrable than the restatement offered by defendants. (I pass over in silence the fact that they introduce their paraphrase as a finding by the Court.) The deeper issue, however, is that I was admitted to the College in early/mid-2014. That is when our contract was formed.[24] The express terms of that implied-in-fact contract were set out in the '13 Handbook (operative at the time), and

---

[22] *Horne*, 576 U.S. at 361 (distinguishing Lucas v. South Carolina Coastal Council, 505 U.S. 1003 (1992)).
[23] Tahoe-Sierra Preservation Council, 535 U.S. 302, 323 (2002).
[24] Papelino v. Albany College of Pharm. of Union Univ., 633 F.3rd 81, 84 (2nd Cir. 2011) ("Under New York law, an implied contract is formed when a university accepts a student for enrollment") (collecting cases).

continued essentially unchanged in the '14 Handbook. But after a year of studying and paying exorbitant tuition fees (*i.e.*, investment-backing), defendants defied my reasonable expectations and unilaterally modified our contract, introducing an impossibly severe attendance policy and an unintelligible, seemingly expanded dismissal policy (*i.e.* the challenged regulatory regime) in the '15 Handbook. Unfortunately for them, that was a fairly straightforward regulatory taking.

## Conclusion

With that, every argument properly raised in defendants' Reply has been defeated. More importantly, every point made in my Response has effectively been conceded; I was dismissed from a state school without prior notice, and in breach of contract – there has been a due process violation, and there has been a taking. Now, if the Court accepts the truth of every factual allegation I have made; if it makes every permissible inference in my favor; if it reads even my feeblest point to raise the strongest argument it suggests; there can be no basis for granting the defendants their motion to dismiss.

Respectfully submitted,

*[signature]*

*February 23rd, 2023*
*Guttenberg, New Jersey*