The Honorable Rachel Peter Kovner
United States District Judge
Eastern District of New York

Re:   Rives v. SUNY Downstate College of Medicine, *et al.*
Case № 1:20-CV-621 (RPK) (LB)

Dear Judge Kovner:

On June 9th, I wrote the Court to seek a briefing schedule for an anticipated renewed motion to proceed pseudonymously. *See* Pl.'s Pre-motion Letter, Dkt. № 90. The Court responded that I should file a further letter "setting out in detail the new arguments and data" that I would present, and addressing "why a request to proceed anonymously that comes more than three years into litigation is appropriate" in light *Sealed Plaintiff* factor seven. Text Order of June 26th, 2023.

Part I of this letter reviews the central holding of *Sealed Plaintiff*, and examines several species of errors that courts regularly commit in attempting to apply the standard established therein. The busy reader may begin at Part II, where a solution is proposed in the form of a simple mathematical framework for the *Sealed Plaintiff* balancing test. Part III sets out the new arguments and data that would be presented alongside a renewed pseudonymity motion, demonstrating the logic of those arguments within the proposed framework.

## I.      General Considerations

**The central holding of *Sealed Plaintiff* is the tripartite balancing test.**
Before making any legal arguments, it is necessary to first establish the general framework within which they will operate and by which their success or failure may be judged. This is especially necessary in the area of pseudonymous litigation, where appellate courts have offered limited guidance, and district courts are split on every significant interpretive question across nearly every category of case.[1]

---

[1] *E.g.*, where plaintiffs allege that they are victims of sexual assault (F1): *Compare* Prasad v. Cornell Univ., WL 3212079, n.4 (NDNY 2016) (permitting anonymity because "the public generally has a strong interest in protecting the identities of sexual assault victims") *with* Doe v. Skyline Autos. Inc., 375 F.Supp 3rd 401, 408 (SDNY 2019) (refusing anonymity because "public interest in sexual assault . . . is very high.")

Or where professional reputational injury is anticipated (F3): *Compare* Doe v. Doe, U.S. Dist. LEXIS 220656, *8 (EDNY 2020) (permitting anonymity for defendant because "the chance that he would suffer reputational harm is significant") *with* Abdel-Razeq v. Alvarez & Marsal, U.S. Dist. LEXIS 153200, *11 (SDNY 2015) (refusing anonymity for defendant because "potential professional losses are not a compelling reason to grant [anonymity]").

Or where plaintiffs are young adults (F4): *Compare* Doe v. City Univ. of N.Y., U.S. Dist. LEXIS 230479 (SDNY 2021) ("where a plaintiff brings claims as an adult, courts find . . . factor [four] cuts against them, regardless of whether the plaintiff is relatively young") *with* Doe v. New York Univ., 537 F.Supp 3rd 483, 496-497 (SDNY 2021) ("Doe is 19 years old and in her first year of college, and though she of course made the decision to bring this lawsuit, the Court sees no reason to expose her to potential online retaliation").

Or where plaintiffs sue government entities (F5): *Compare* S.D. v. Decker, LEXIS 76861, *7 (SDNY 2022) ("[T]he fact that petitioner is litigating against the government weighs in his favor.") *with* E.A. v. Brann, U.S. Dist. LEXIS 143208, *10 (SDNY 2018) ("[Plaintiff's] suit is challenging governmental action, which renders his identity of greater public interest").

In 2008, the Second Circuit Court of Appeals "set forth the standard governing the use of pseudonyms in civil litigation in [this] Circuit."[2] Endorsing the test adopted by the Ninth Circuit, the Court held:

> [W]hen determining whether a plaintiff may be allowed to maintain an action under a pseudonym, the plaintiff's interest in anonymity must be balanced against both the public interest in disclosure and any prejudice to the defendant.[3]

The Court offered, as guidance, ten example factors for district courts to consider, but cautioned that the list was "non-exhaustive," and that courts should "take into account other factors relevant to the particular case under consideration."[4] However, every factor a court considers must correspond to one or more of the "relevant interests at stake:"[5]

A = The plaintiff's interest in anonymity

B = The public's interest in disclosure of the plaintiff's identity

C = Any prejudice to defendants resulting from non-disclosure

**Courts frequently misapply *Sealed Plaintiff*.**

Multi-factor balancing tests are notoriously difficult to apply with any degree of consistency.[6] And *Sealed Plaintiff* is not the finest crafted of such tests. The ten factors enumerated in the opinion comprise a hodgepodge of factors and sub-factors from at least seven other courts, mostly from outside the Second Circuit, and reflect their varying and often contradictory approaches to the question of pseudonymity. Unsurprisingly, courts applying *Sealed Plaintiff* struggle to correctly interpret the factors and the test as a whole.

The most common types of errors that courts commit are (1) deciding based on general presumptions, broad policy concerns, and the like; (2) applying another circuit's decisional standard; (3) conflating factor eight with the general presumption in favor of open judicial proceedings; (4) weighing inherently favorable factors unfavorably if they do not obtain; and (5) treating all factors as coequal. These errors will be reviewed in turn.

---

Or where the plaintiff's identity has not been kept confidential (F7): *Compare* T.W. v. N.Y. State Bd. Law Exam'rs, U.S. Dist. LEXIS 158060 (EDNY 2017) (F7 is "not conclusive") *with* Doe v. Nat'l Conf. Bar Exam'rs, U.S. Dist. LEXIS 2481 (EDNY 2017) ("[f]iguratively speaking, the cat is already out of the bag.")

Or where the dispute is between private parties (F8): *Compare* Doe v. Doe, U.S. Dist. LEXIS 220656, *11 (EDNY 2020) ("there is no special or heightened interest in the identities of parties who are not public figures") *with* Doe v. Townes, U.S. Dist. LEXIS 83550, *14 (SDNY 2020) ("there is a significant interest in open judicial proceedings, even in ordinary civil litigation between private parties") (quoting Doe v. Del Rio, 241 F.R.D. 154, 159 (SDNY 2006)).

Or where the case presents purely legal questions: *Compare* Doe v. Hochul, WL 836990 (EDNY 2022) (permitting anonymity in religious challenge to COVID-19 vaccine mandate) *with* Doe v. City Univ. of N.Y., U.S. Dist. LEXIS 230479 (SDNY 2021) (not).

[2] Sealed Plaintiff v. Sealed Defendant, 537 F.3rd 185, 189.

[3] *Id.*

[4] *Id.*

[5] Combining *id.* at 186 & n.4.

[6] *See* Scalia, J. "The Rule of Law as a Law of Rules." 56 U. Chi. L. Rev. 1175, 1179-80 (1989) (criticizing balancing tests' lack of predictability).

*Deciding based on rules or general presumptions.*

Many courts faced with the question of anonymity have expressed the concern that if plaintiffs were regularly permitted to bring their cases anonymously, the so-called "exception" would "swallow the rule,"[7] referring to the dictum of *United States v. Pilcher* that "pseudonyms are the exception and not the rule."[8] Yet, if *Sealed Plaintiff* stands for anything, it is that district courts should not decide pseudonymity motions on the basis of any rule or general presumption. "Balancing tests, by their very nature, require case-specific determinations."[9] The district court in *Sealed Plaintiff* had erred, it was said, because it "believed itself strictly bound by the requirement of Rule 10(a)."[10]

Fed. R. Civ. P. 10(a) speaks in imperative terms; it would not permit anonymous litigation in exceptional cases or unexceptional ones. But to control decision making through rules requires "revising the rules from time to time to keep them abreast of changing conditions," since "specific rules will obsolesce more rapidly than a general standard."[11] Whereas the substance of Rule 10(a) has not changed since 1938, the advent of modern internet search engines and the widespread adoption of electronic case management over the past two decades has made case-related information incomparably more visible, and the personal risks associated with open litigation incalculably greater, than when the rule was adopted.

Perhaps for this reason, the Second Circuit instructed district courts to eschew a mechanistic application of Rule 10(a) and to instead apply a standard—a "factor-driven balancing inquiry"[12]—that considers the plaintiff's interest in proceeding anonymously, *A*, the public's interest in knowing the plaintiff's identity, *B*, and any prejudice to the defendants resulting from non-disclosure of the plaintiff's identity, *C*. When a court looks past these three particular interests and decides on the basis of a rule or general presumption, it implicitly rejects the Second Circuit's standard.

*Deciding based on general policy concerns.*

In cases too numerous to count, a court will fixate on the policy implications of normalizing anonymity. *See*, e.g., *Doe v. Fullstack Acad., Inc.* (SDNY 2018) ("If this case were allowed to proceed anonymously, the great majority of ADA plaintiffs would also be permitted to do so.")[13] But general policy concerns are not among the interests at stake under *Sealed Plaintiff*. A court faithfully applying the standard must restrict itself to the circumstances of the case before it. If the factors in the case, properly considered, favor anonymity, the court cannot refuse merely because many other plaintiffs would also qualify. The test is not whether the case is a rare or exceptional one, but whether the balance of interests in the case favors anonymity or disclosure. All that matters in the *Sealed Plaintiff* analysis is the here-and-now—the public's interest in the particular litigation, and the private interests of the particular litigants.

---

[7] Doe v. Gooding, WL 1104750, *16 (SDNY 2022)

[8] 950 F.3rd at 45 (2nd Cir. 2020) ("In *Sealed Plaintiff*, we held that pseudonyms are the exception and not the rule.") Note: A careful reading of *Sealed Plaintiff* reveals nothing of the sort. Insofar as the correct decisional standard is set out in *Sealed Plaintiff* and not *Pilcher*, the dictum of the latter must give way.

[9] Doe v. 239 Park Ave. South Assocs., LLC, U.S. Dist. LEXIS 179295, *13 (SDNY 2022).

[10] 537 F.3rd at 189–190.

[11] Posner, J., Economic Analysis of the Law, 9th ed., §21.3. Wolters Kluwer, 2014.

[12] *Sealed Plaintiff* 537 F.3rd at 190.

[13] 2018 U.S. Dist. LEXIS 173050, *5.

*Deciding based on the legal strategies of previous plaintiffs.*

In rejecting a plaintiff's bid for pseudonymity, courts have sometimes reasoned that, since plaintiffs in other, similar cases have litigated under their own names, pseudonymity is likewise unnecessary for the plaintiff in the case at bar. *See*, e.g., *Doe v. Cornell Univ.* (NDNY 2021) ("Indeed, in many cases involving the ADA or Title IX, plaintiffs frequently proceed under their own names regarding matters that are personal, sensitive, and involve medical records. [citing cases] As a result, this factor weighs against permitting Plaintiff to shield his identity.")[14] Of course, this is a complete *non sequitur*. The fact that one plaintiff's attorneys did not think to protect their client's privacy interest implies absolutely nothing about whether anonymity is necessary or appropriate for a different plaintiff litigating a different case under different circumstances.

*Applying the wrong standard.*

Recently, several district courts have characterized the *Sealed Plaintiff* test as one which balances a plaintiff's privacy interest on the one hand against the universal public interest in open judicial proceedings on the other. *See Doe v. Weinstein* (SDNY 2020) ("The fundamental question is whether Plaintiff has a substantial privacy interest that outweighs the customary and constitutionally-embedded presumption of openness in judicial proceedings");[15] *Rapp v. Fowler* (SDNY 2021) ("The Court's role is to weigh [the Plaintiff's] privacy interest against . . . the public's interest in open judicial proceedings.")[16] Two objections: *First*, such a standard is unworkable. *Second*, it is the wrong standard.

Although the Third, Fifth, Tenth, and Eleventh Circuits have indeed described their respective tests as balancing an individual litigant's privacy interest against the general public interest in open judicial proceedings,[17] it is far from obvious how such a balance could be struck. Certainly, a court can weigh the privacy interest of an individual litigant, but what is the weight of the public's interest in open proceedings *generally*? One cannot meaningfully compare the two, any more than one can compare apples to orchards.

By contrast, the Ninth Circuit holds that a party may proceed anonymously "when the party's need for anonymity outweighs . . . the public's interest in knowing *the party's* identity."[18] In *Sealed Plaintiff*, after reviewing several other circuits' tests, the Second Circuit explicitly endorsed the Ninth Circuit's formulation. Thus, a district court faithfully applying the standard of this Circuit does not attempt to weigh the universal public interest in open judicial proceedings. Instead, it weighs the public's particular interest in identifying the particular plaintiff in the particular case at bar.

---

[14] 2021 U.S. Dist. LEXIS 248809, *12 (citing Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis., 804 F.3rd 178, 183 (2nd Cir. 2015); Fox v. Costco Wholesale Corp., 918 F.3rd 65, 68 (2nd Cir. 2019); Tubbs v. Stony Brook Univ.) 343 F.Supp. 3rd 292, 296–97 (SDNY 2018).

[15] 484 F.Supp 3rd 90, 98.

[16] 537 F.Supp 3rd 521, 532-533.

[17] *Sealed Plaintiff* at 189 (describing Fifth Circuit's test as "pitting privacy concerns against the presumption of openness of judicial proceedings;" Tenth Circuit's as weighing "the plaintiff's claimed right to privacy against the countervailing public interest in [open proceedings]" (alteration in *Sealed Plaintiff*); Eleventh Circuit's as "whether the plaintiff has a substantial privacy right which outweighs the customary and constitutionally-embedded presumption of openness in judicial proceedings."); *see also* Doe v. Megless, 654 F.3rd 404, 409 (3rd Cir. 2011) (defining Third Circuit's test as "whether a litigant has a reasonable fear of severe harm that outweighs the public's interest in open litigation.")

[18] Does I Thru XXIII v. Advanced Textile Corp., 214 F.3rd 1058, 1068 (9th Cir. 2000) (emphasis added).

*Conflating F8 with the universal public interest in open judicial proceedings.*
Closely related to the errors above, courts will often suggest that factor eight weighs the public interest in open judicial proceedings. *See*, e.g., *Doe v. Leonelli* (SDNY 2022) ("The Court's only role in assessing this factor is to weigh the public's significant interest in open judicial proceedings against the [p]laintiffs' countervailing privacy interests.")[19] This grossly misunderstands the operation of balancing tests in general, the factor eight inquiry in particular, and the relevant interests in the *Sealed Plaintiff* test as a whole.

At the risk of stating the obvious, in a properly executed balancing test, no single factor disposes. Rather, each relevant factor is assigned a corresponding weight on one side of the scale or the other; the respective weights on each side are summed; and the two totals are compared. Whichever side weighs more, wins. But if F8 functioned as *Leonelli* and other courts have suggested, what purpose would the other *Sealed Plaintiff* factors serve? Once a court determines that the public's interest in disclosure outweighs the plaintiff's interest in anonymity, the analysis is over. Such a reading of F8 would render all the other factors superfluous. It cannot be correct.

As shown above, the true F8 inquiry is with respect to the public's interest in knowing the identity of a particular plaintiff in a particular case. Factor eight does not ask whether the public interest is furthered by *generally* requiring plaintiffs to disclose their identities, or whether the public interest is served by open judicial proceedings *generally*. These are not factors at all, but accepted truths which do not vary from case to case. Instead, F8 asks "whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose his identity."

The original formulation of the factor, from *Doe v. Provident Life & Accident Ins. Co.* (EDPa 1997), offers a somewhat clearer sense of the inquiry:

> [W]hether, because of the subject matter of this litigation, the status of the litigant as a public figure, or otherwise, there is a particularly strong interest in knowing the litigants' identities, beyond the public's interest which is normally obtained.[20]

The Court may, of course, use whatever formulation of F8 it prefers,[21] but the version quoted above, in addition to its clarity, also has the virtue of dovetailing nicely with *Sealed Plaintiff* factor nine, the text of which was copied verbatim from *Provident Life*:

> [W]hether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities.[22]

Notably, *Provident Life* also proposed another "factor" weighing against pseudonymity, "the universal level of public interest in access to the identities of litigants."[23] This is

---

[19] Doe v. Leonelli, 2022 WL 2003635, *13.
[20] 176 F.R.D. 464, 468.
[21] *Sealed Plaintiff*, 537 F.3rd at n.4 ("[A] district court is not required to . . . use any particular formulation as long as it is clear that the court balanced the interests at stake in reaching its conclusion.")
[22] *Id.* at 190 (citing *Del Rio*, 241 F.R.D. at 157 (in turn citing *Provident Life*, 176 F.R.D. at 468)).
[23] 176 F.R.D. at 468.

significant for two reasons: First, it was given as a separate factor, which confirms that that consideration is distinct from F8. Second, no corresponding factor was adopted in *Sealed Plaintiff*, suggesting that such a consideration does not speak to any of the interests at stake in the Second Circuit's balancing test.

The F8 inquiry primarily concerns a litigant's status as a public figure. For example, if, after carefully studying the record of a run-of-the-mill ADA employment discrimination case, we were told that the plaintiff's name was Frank Jones, we would have no greater interest in or understanding of the case than we did before. And if we later learned that Frank Jones was a pseudonym, that his name was actually Bill Henshaw, our overall picture of the case would not change. Indeed, the mere fact that pseudonymity was permitted would be more interesting than the plaintiff's actual identity. When the plaintiff is not a public figure, his name is literally meaningless to anyone who does not already know him. In such cases, the public's interest in the litigation is not *furthered* by requiring the plaintiff to disclose his identity, so the weight of F8 is *zero. See Doe v. Doe* (EDNY 2020) ("there is no special or heightened interest in the identities of parties who are not public figures.")[24]

On the other hand, when the plaintiff is a public figure, his name will have some meaning to the reader. If we were told, in the hypothetical case above, that the plaintiff's name was Clint Eastwood, we would feel that we had learned something new and terribly important. In our minds, it would become "the Clint Eastwood case." Knowing the plaintiff's identity would greatly further the public's interest in the litigation, so the weight of F8 would be significant. Of course, if we were told that the plaintiff was not actually *that* Clint Eastwood, but just someone with the same name, our overall picture would return to what it was before.

*Conflating the public interest in open judicial proceedings with the public's interest in identifying the parties to a case.*

It has been suggested that because the people have a significant interest in open judicial proceedings (*i.e.*, open trials), they likewise have a significant interest in identifying the parties to litigation. "[L]awsuits are public events and the public has a legitimate interest in knowing the facts involved in them. Among those facts is the identity of the parties."[25] Yet, as the Fifth Circuit recognized more than forty years ago,

> The equation linking the public's right to attend trials and the public's right to know the identity of the parties is not perfectly symmetrical. . . . Party anonymity does not obstruct the public's view of the issues joined or the court's performance in resolving them. The assurance of fairness preserved by public presence at a trial is not lost when one party's cause is pursued under a fictitious name. These crucial interests served by open trials are not inevitably compromised by allowing a party to proceed anonymously.[26]

The public, to the extent it was interested in an unremarkable civil case *at all*, would want to know the particular facts of the case—the what, where, and when—and would want

---


[24] 2020 U.S. Dist. LEXIS 220656, *11. *See also* Ipsos MMA, Inc. v. Doe, U.S. Dist. LEXIS 27972, *4 (SDNY 2022); *Provident Life*, 176 F.R.D. at 468.

[25] *Del Rio*, 241 F.R.D. at 156. (quoting Doe v. Deschamps, 64 F.R.D. 652, 653 (D.Mont. 1974).

[26] Doe v. Stegall, 653 F.2nd 180, 185 (5th Cir. 1981).

a general sense of the *who*—a mother vs. school administrators; a farmer vs. the EPA; a Chinese restaurant worker vs. the restaurant's owners, *etc*. An exceptionally interested reader might be curious about details whose relevance is not immediately apparent—the plaintiff's age, sex, race, place of birth, height, profession, religion, political leaning, income level, number of siblings, or favorite film. Even seemingly esoteric details like these can add context (or at least color), because they are *generalizable*; they have some broader significance—some associated informational content which contributes to the reader's overall impression of the litigation. But in the mine-run case where the plaintiff is a nobody, with no criminal record, with no prior history of litigation, with no public presence to speak of, the plaintiff's name would be utterly meaningless to anyone who did not happen to know him personally. There could be no particularly strong interest in requiring disclosure of such a plaintiff's name, because it would add nothing to the public's understanding of the case.

   *Treating intrinsically favorable factors as unfavorable.*
 A factor which inherently favors pseudonymity can never weigh against it; to the extent it does not obtain, its weight is *zero*. Yet, courts often treat such factors, if they do not obtain, as weighing against pseudonymity. *See*, e.g., *Rapp v. Fowler* (SDNY 2021) ("If a plaintiff is not a child, [factor six] weighs against a finding for anonymity.")[27]

 This very argument was made on a motion for reconsideration in *Doe v. Solera Capital, LLC.* (SDNY 2019). The court in that case had apparently decided that, given the "presumption in favor of disclosure, rather than a neutral *status quo ante*, it would weigh all factors not directly supporting anonymity as upholding that presumption."[28] On reconsideration, the court acknowledged the possibility that it had misapplied the law, but denied that its decision amounted to clear error, reasoning that the *Sealed Plaintiff* framework affords "considerable deference to courts in determining how to properly balance the competing interests at stake."[29] While the plaintiff's appeal was pending, however, Judge Ramos indicated he would vacate the decisions if the case was remanded for that purpose. It was, and he did.[30] This suggest that, notwithstanding the broad deference courts enjoy in this area, such a loose interpretation of *Sealed Plaintiff* would invite reversal.

   *Treating the factors as coequal.*
 Numerous courts in this Circuit have, in their final analysis, adopted the unfortunate practice of *tallying* the factors rather than weighing them in the balance. *See*, e.g., *A.B. v. Hofstra Univ.* (EDNY 2018) ("Looking at the ten factors together, two weigh in favor, one is neutral, and seven weigh against allowing Plaintiff to proceed pseudonymously. This is sufficient to require Plaintiff to proceed in his true name in this action.")[31] This sort of analysis would be valid only if each of the relevant *Sealed Plaintiff* factors happened to weigh identically in a given case. That is unlikely, however, since properly speaking, most of the factors do not even represent a single issue, but a grouping of two or three related issues. A court that reduces the test to a facile counting exercise risks abusing its discretion.

---

[27] 537 F.Supp 3rd 521, 530.
[28] 2019 U.S. Dist. LEXIS 185333, *20. (internal citation omitted).
[29] *Id.*
[30] 2020 U.S. Dist. LEXIS 258328.
[31] 2018 WL 1935986.

## II.     A "Learned Hand formula" for *Sealed Plaintiff.*

As shown above, courts do not always perfectly grasp the relevant interests at stake in performing the Sealed Plaintiff test. Nor, it seems, do they always understand how those interests are supposed to be balanced. This leads to incongruous and inconsistent results. I gently suggest that a more precise analytical framework is needed.

In 1947, in *Carroll Towing*, Judge Hand of the Second Circuit Court of Appeals famously proposed a test of liability for negligence "in algebraic terms," the so-called "B-P-L" formula.[32] The tripartite balancing test at the heart of *Sealed Plaintiff* is similarly susceptible of a mathematical formalism. What I propose is simple, useful, and faithful to the text of the opinion.

We may say that anonymity should be granted *if and only if* $A > B + C$, or:

$$Va - Vo > Po - Pa - E + C \quad \Leftrightarrow \quad \text{anon.}$$

Where *Va* is the expected value to the plaintiff if his case is litigated anonymously; *Vo* is the expected value to the plaintiff if the case is litigated openly; *Po* is the informational value to the public of litigating the case openly; *Pa* is the informational value to the public of litigating it anonymously; *E* represents any negative externalities expected to result from disclosure of the plaintiff's identity; and *C* represents any prejudice to defendants expected to arise as a result of non-disclosure. (*See* Appendix B, explaining the effect of each *Sealed Plaintiff* factor and sub-factor on these variables.)

The plaintiff's interest in anonymity, *A*, is here defined as the difference in expected value between litigating anonymously and litigating openly, *Va – Vo*, or, in other words, the marginal utility of anonymity. The public's interest in disclosure of the plaintiff's identity, *B*, is defined as *Po – Pa – E*, or the marginal utility of disclosure, less any measurable negative externalities. As with the B-P-L formula, of course, further refinements are possible. But even as a first approximation, the above formula proves useful, as shown next.

## III.    Specific Considerations

**The *Sealed Plaintiff* balancing test favors anonymity in this case.**

Applied to the specific circumstances of this case, the above formula counsels for granting pseudonymity. *Va – Vo* is large: It is the value of a medical career, and then some. Thus, the magnitude of the plaintiff's privacy interest, *A*, is significant in this case.

*Po – Pa* is small: This is a constitutional case, and I am not a public figure; no one actually cares what my name is. *See Doe v. U.S. Merch. Marine Acad.* (EDNY 2018) ("this case focuses upon the constitutionality of the disciplinary procedures utilized by the Academy," and "the public has the unfettered ability to understand both the factual and legal issues . . . without reference to the identity of the plaintiff");[33] *see also Doe v. Doe* (EDNY 2020) ("there is no special or heightened interest in the identities of parties who are not public figures.")[34] And *E*, the measure of any negative externalities, is surely significant here: Without a medical career, I am unlikely to ever be in a position to repay my federally-

---

[32] 159 F.2nd 169, 173.

[33] 2018 U.S. Dist. LEXIS 67113, *7

[34] 2020 U.S. Dist. LEXIS 220656, *11

backed student loans, and the People will be left holding the bag. Thus, the public's interest in disclosure of the plaintiff's identity ($B = Po - Pa - E$) is likely *negative* in this case.

As for $C$, most courts confronting the question have found that defendants are not greatly prejudiced by a plaintiff's anonymity—especially in the pre-trial stages of litigation—so long as they are aware of the his identity. *See Doe v. Gong Xi Fa Cai, Inc.* (SDNY 2019);[35] *Doe No. 2 v. Kolko* (EDNY 2006);[36] *Doe v. Smith* (EDNY 1999).[37] Here, defendants have not indicated whether or how they would be prejudiced by anonymity, so, for now at least, the magnitude of $C$ is *zero*. All told then, $A > B + C$, and the Court should permit anonymity.

**Such a request is appropriate even now; the anticipated harm is still preventable.**

The Court asks "why a request for anonymity that comes more than three years into litigation is appropriate" in light of *Sealed Plaintiff* factor seven. What I wrote more than three years ago still holds true today: If the Court thinks it might grant injunctive relief in the form of reinstatement to medical school, it *must* allow me to proceed under a pseudonym, else the value of reinstatement will be nil.[38] It is appropriate to do so even now because the most significant harm anticipated in this case is not expected to occur for several years. In other words, it is still preventable.

Indeed, it would still be preventable at a later stage of litigation. In theory, the Court could permit anonymity on the eve of trial, or even later. So long as two years after I was reinstated as a medical student a casual Google search of my name did not immediately bring up this case, then the few individuals in the country who decide which applicant will be admitted to their program would be unlikely to discover that I sued my medical school and reject me out of hand. The marginal utility of litigating anonymously, $Va - Vo$, would still be significant, and my interest in anonymity, $A$, would still be great.

Some courts have suggested that once a plaintiff's identity has been revealed, "the cat is out of the bag," and there is little to gain by subsequently permitting anonymity.[39] That may be true where the plaintiff's anticipated harm is retaliation by defendants, but not where the danger comes from third parties at some future date, as it does here. *See Doe No. 1 v. United States* (2019) ("the Government's 'cat is out of the bag' argument fails because the fact that Plaintiffs have not been harassed or attacked yet does not imply that anonymizing their names now has no value.")[40] That said, the Court's next major ruling in this case, deciding whether my procedural-due-process and Takings Clause claims survive defendants' motion to dismiss, may well attract the attention of legal news outlets. If my name is still attached to the case when it becomes widely reported, it will be more difficult—but still not impossible—to bag the cat. *See Roe v. Doe* (DDC 2019) (granting defendant's renewed motion for pseudonymity following heightened media interest in his identity).[41]

---

[35] 2019 WL 3034793, *2.
[36] 242 F.R.D. 193, 198.
[37] 105 F.Supp 2nd 40, 44.
[38] *See* Pl's Pseudonym Mot., Dkt. № 7; *see also* Reconsideration Mot., № 10, 13; Response Ltr., № 14; Reply to Show-Cause Order, № 71, at postscript.
[39] *See*, e.g., Doe v. Nat'l Conf. of Bar Examiners, U.S. Dist. LEXIS 2481 (EDNY 2017).
[40] 143 Fed. Cl. 238, 241.
[41] 2019 U.S. Dist. LEXIS 68737, *1.

**Factor Seven intrinsically favors pseudonymity — at worst, its weight is *zero*.**

As for F7, it is "just one factor of many the Court must consider, and not conclusive."[42] But insofar as the Court means to consider it, it should first ask in which direction the factor actually points. *See* Appendix B. While *Sealed Plaintiff* itself does not specify which factors favor and which oppose pseudonymity, in the Third Circuit's *Megless* opinion—the only other test to list such a factor—the F7 equivalent factor is said to favor pseudonymity.[43] One might reach the same conclusion by simply looking to the text of F7 and asking which category of relevant interests it weighs under—*A*, *B*, or *C*. "Whether the plaintiff's identity has thus far been kept confidential" does not appear to speak to prejudice to defendants, or to the public's interest in disclosure of the plaintiff's identity, but only to the plaintiff's own interest in anonymity.

Where the plaintiff's identity has already been widely disclosed and F7 does not obtain, its weight is *zero*, and the plaintiff's interest in anonymity, *A*, may be small. But where the plaintiff's identity has been kept confidential and F7 obtains, the marginal utility of litigating anonymously remains significant, and the plaintiff's interest in anonymity is correspondingly great.

**Arguably, my identity has been kept confidential.**

As it happens, this is a case in which F7 weighs in favor of anonymity, because the plaintiff's identity has thus far been kept confidential. Although I have gone by "Rives" throughout my life, it has never actually been my legal surname. When I was about three years old, my mother got it into her head that we would do well not to be thought Dominican peasants. She traded Riv*as* for the more gentrified (to her ear) Riv*es*. She changed her name legally, but mine only informally. Whereas my educational records, bank accounts, credit cards, *etc.*, all used "Rives;" my birth certificate, social security card, tax returns, and driver's license all reflect the original spelling. Because the case caption does not actually reflect my legal name, it cannot be said that there is an interest in keeping it as-is to comply with Fed. R. Civ. P. 10(a) or 17(a). Whether or not the Court permits pseudonymity, the caption must be changed.

Moreover, because the case caption has *never* actually reflected my legal name, it can be argued that my identity has not yet been disclosed. Such an argument finds support in a case already cited by this Court: In *Vega v. HSBC Secs. (USA), Inc.* (SDNY 2019), a plaintiff sued his former employer, under seal, but using his own name.[44] The seal was soon lifted, and the plaintiff subsequently found it impossible to obtain employment in his industry, eventually resorting to legally changing his name. To prevent his new identity from becoming similarly tainted by association with his case, he asked to continue to prosecute his case as "Christopher Vega." Relevant here, the court held that the plaintiff's former name was "effectively" a pseudonym.[45] This Court quoted the same proposition in *Vega* when it denied my first motion. *See* Pseudonym Denial Order (№ 9) at 6. But if "Vega" was a pseudonym because it was *no longer* that plaintiff's legal name, much more so "Rives," which has *never* been my legal name. Arguably, then, F7 favors anonymity in this case.

---

[42] T.W. v. N.Y. State Bd. Law Exam'rs, U.S. Dist. LEXIS 158060, *7 (EDNY 2017).

[43] 654 F.3rd 404, 409.

[44] 2019 U.S. Dist. LEXIS 93364, *1.

[45] *Id.* at *2.

**Courts usually permit anonymity for student plaintiffs.**

As *Vega* demonstrates, courts often lack sympathy for litigants who express fears of reputational or career injury. Notwithstanding, they frequently grant anonymity to one such group of litigants—higher-education students who sue their schools alleging that they were wrongly punished or dismissed.[46] The practice of pseudonymizing student plaintiffs dates at least as far back as the early eighties,[47] but it has greatly expanded in recent years as those would-be litigants recognize the significant dangers they face in an era of Google-searchable public dockets.[48] Indeed, over the past five years in the Second Circuit alone, literally *dozens* of students sought to proceed anonymously against their schools. Their requests were granted in more than ¾ of cases. *See* Appendix A.

**Anticipated harms are inherently speculative; this one is reasonably foreseeable.**

In the few cases in which a court in this Circuit denied a student plaintiff's request for anonymity, it usually indicated that the student's feared harm was "speculative" in nature. But no court has explained what this means, or how one would distinguish speculative harms from non-speculative ones. Black's Law Dictionary defines speculation as "the act or practice of theorizing about matters over which there is no certain knowledge." The anticipated harm in this case might therefore be branded speculative, but only in the sense that *any* prediction of an outcome contingent on human agency entails some degree of speculation.

Perhaps the better question is whether the anticipated harm can reasonably be expected to occur. Although program directors have not explicitly threatened to reject me because I sued my medical school—nor are the likely to—this is the plainly foreseeable consequence of litigating this case without pseudonymity.[49] As the *Alvarez* court recognized, "[i]n today's internet-based society, it has become the norm to seek and to access publicly available information about potential employees and consultants as well as professional and personal acquaintances."[50]

The resident selection process is hardly the paragon of dispassionate, merit-based decision making. In fact, it has been shown to be outrageously biased, with one recent study demonstrating that residencies weighed their applicants' *facial attractiveness* more heavily than "well-established medical school performance metrics such as preclinical class rank, clinical clerkship grades, AOA membership, and quantity of research publications, all of which have been shown to be among the most important factors in [choosing] applicants for interview."[51] If program directors routinely reject applicants they perceive as ugly, they would not think twice about rejecting an applicant they perceived as litigious. Indeed,

---

[46] Eugene Volokh, *The Law of Pseudonymous Litigation*, 73 Hastings L.J. 1353, 1423 (2021 / 2022).

[47] *See, e.g.,* Doe v. New York Univ., U.S. Dist. LEXIS 14904 (SDNY 1981).

[48] *See* Volokh, *supra* note 54, at 1374.

[49] Lior Jacob Strahilevitz, *Reputation Nation: Law in an Era of Ubiquitous Personal Information*, 102 Nw.U.L.Rev. 1667, 1679-82 (2008) (describing how landlords, employers, and other decisionmakers increasingly use public information about past litigation when evaluating counterparties).

[50] 2015 U.S. Dist. LEXIS 153200, *21-22.

[51] Maxfield, *et al.*, *Bias in Radiology Resident Selection*. 94 Acad. Med. 1774, 1777 (Nov. 2019).

residency programs have previously rejected students who brought meritorious cases against their schools.[52]

**My identity need not be kept from the public at all.**

Factor ten of *Sealed Plaintiff* asks "whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff." I reiterate that the danger I face arises because, years from now, a handful of powerful individuals will see my name on an application to their program, and, after quickly googling it, learn of the existence of this case. The danger is *not* from the broader public looking into the details of the case and discovering my name. The concern here is unusually narrow, and the Court may just as narrowly tailor its relief.

If "those who monitor the courts" actually care about the identity of the plaintiff in this case—though I cannot fathom why they would—then let them have it! I could file a copy of my birth certificate as an exhibit. Or the Court could bury my name in a footnote, perhaps enciphered as "Kbo-Njdibfm Sjwbt." (Subtract one from each letter to get the real name.) Or mirrored: ƨɒiЯ lɘɒнɔiM-nʙꓘ. Or in Greek: Jαν-Μιχαελ Ριυας. Or Hunt-for-Red-October "Russian:" ЈДИ-ЉЇСНДЄL ЯЇVДꙄ. It does not matter how obvious it is to a human reader—only that it is not obvious to a Google search bot.

If the concern is truly that interested members of the public should be able to learn my identity, there are myriad ways to make it available to them without putting it in the caption and plastering it all over the docket. *See Stankiewicz v. Universal Commerce Corp.* (SDNY 2017) (deciding that "[a]n order that masks the names in the caption will reduce the publicity afforded to the parties while still allowing access to the unredacted documents in the court file.")[53] So-called "penetrable pseudonymity" has been suggested as a reasonable compromise: "Those who really want to learn the party's name can find it, but it takes a bit of work and possibly expense, just as in the past going to the courthouse to get court records was allowed but involved work and expense."[54] Here, all one would have to do to learn my identity would be to read the Court's decision, or download a filing containing a copy of my birth certificate or similar. This could not represent a significant burden on any member of the public who was actually interested in the case.

Respectfully submitted,

*Guttenberg, NJ*
*October 26th, 2023*

---

[52] *See* "SUNY wouldn't let me finish medical training after I became paralyzed." New York Post. May 14, 2016. Retrieved October 23, 2023. https://nypost.com/2016/05/14/suny-wouldnt-let-me-finish-med-school-after-i-became-paralyzed/

Note: Although Kleyman obtained a settlement from Downstate, *see* Kleyman v. Dresner, № 16-CV-2288 (EDNY 2016) ("*Kleyman I*"), she was not readmitted, and the program refused to facilitate her transfer, so Kleyman was unable able to complete her surgical training. Eventually, Downstate settled again, *see* WL 5645218 (EDNY 2020) ("*Kleyman II*").

[53] 2017 U.S. Dist. LEXIS 126319, *3

[54] Volokh, *supra* note 7, at 1374.

**Appendix A:** Second-circuit cases in which a student plaintiff sought to proceed anonymously, Apr. 2018 – present.

| Motion Granted | Motion Denied |
|---|---|
| † Doe v. United States Merchant Marine Acad., 2018 U.S. Dist. LEXIS 67113 (EDNY Apr. 20, 2018) | |
| † Doe v. Syracuse Univ., 2018 U.S. Dist. LEXIS 154899 (NDNY Sept. 10, 2018) | |
| Doe v. Syracuse Univ., 341 F.S$^{upp}$ 3rd 125 (NDNY Sept. 16, 2018) | |
| Doe v. Trs. of Columbia Univ. in N.Y., 2018 WL 5307479 (SDNY Oct. 26, 2018) | |
| Noakes v. Syracuse Univ., 369 F.S$^{upp}$ 3rd 397 (NDNY Feb. 26, 2019) | |
| Doe v. Syracuse Univ., 2019 WL 2021026 (NDNY May 8, 2019) | |
| Doe v. Yale Univ., № 19-cv-1663 (DCt. Oct. 22, 2019) | |
| † Doe v. Sarah Lawrence Coll., 2019 U.S. Dist. LEXIS 190370 (SDNY Oct. 31, 2019) | |
| † Doe v. Vassar College, 2019 WL 5963482 (SDNY Nov. 13, 2019) | |
| † Doe v. Smith, 2019 U.S. Dist. LEXIS 205707 (NDNY Nov. 27, 2019) | |
| Doe v. Univ. of Conn., 2020 WL 406356 (DCt. Jan. 23, 2020) | |
| Doe v. Union Coll., 2020 WL 1063063 (NDNY Mar. 5, 2020) | |
| † Doe v. Syracuse Univ., 2020 WL 2028285 (NDNY Apr. 28, 2020) | |
| Doe v. Colgate Univ., 457 F.S$^{upp}$ 3rd 164 (NDNY Apr. 30, 2020) | |
| Doe v. Syracuse Univ., 457 F.S$^{upp}$ 3rd 178 (NDNY Apr. 30, 2020) | |

i

Dagger (†) indicates discussion of *Sealed Plaintiff* factors. Double-dagger (‡) indicates citation to this Court's August 4th, 2020 decision.

**Appendix A:** Second-circuit cases in which a student plaintiff sought to proceed anonymously, Apr. 2018 – present.


Doe v. Syracuse Univ.,
2020 WL 2513691 (NDNY May 15, 2020)

† Rives v. SUNY Downstate Coll. Med.,
2020 WL 4481641 (EDNY Aug. 4, 2020)

† Doe v. Wesleyan Univ., 2020 U.S. Dist.
LEXIS 267036 (DCt Sept. 15, 2020)

Doe v. Rensselaer Polytechnic Inst.,
2020 WL 5775193 (NDNY Sept. 28, 2020)

‡ Doe v. Cornell Univ., 2021 U.S. Dist.
LEXIS 248809 (NDNY Jan. 28, 2021)

† Doe v. Hobart & William Smith Colls., 2021
WL 1062707 (WDNY Mar. 19, 2021)

Roe v. St. John's Univ.,
2021 WL 1224895 (EDNY Mar. 31, 2021)

† Doe v. Trs. of Columbia Univ. in N.Y.,
2021 WL 1253974 (SDNY April 1, 2021)

† Doe v. New York Univ., 537 F.S$^{upp}$ 3rd 483
(SDNY Apr. 28, 2021)

Doe v. Yale Univ.,
564 F.S$^{upp}$ 3rd 11 (DCt. Sept. 28, 2021)

‡ Doe v. City Univ. of N.Y.,
2021 WL 5644642 (SDNY Dec. 1, 2021)

† Doe v. Gerken,
2022 WL 167914 (DCt. Jan. 18, 2022)

Doe v. Syracuse Univ.,
2022 WL 798058 (NDNY Mar. 16, 2022)


Doe v. Vermont Law School,
Nº 22-cv-00085 (DVt. Jun. 13, 2022)

† Doe v. Sarah Lawrence Coll.,
2022 WL 2866473 (SDNY Jul. 20, 2022)

Dagger (†) indicates discussion of *Sealed Plaintiff* factors. Double-dagger (‡) indicates citation to this Court's August 4th, 2020 decision.

**Appendix A:** Second-circuit cases in which a student plaintiff sought to proceed anonymously, Apr. 2018 – present.

Doe v. SUNY Purchase Coll.,
617 F.S^upp 3rd 195 (SDNY Jul. 27, 2022)

† Doe v. Univ. of Vt. & St. Agric. Coll.,
2022 WL 17811359 (DVt. Dec. 19, 2022)

† Doe v. Columbia Univ. in the City of New York, 2023 U.S. Dist. LEXIS 640 (SDNY Jan. 3, 2023)

† Roe v. RPI, 2023 WL 3853647 (NDNY);
*report and recommendation adopted*, U.S. Dist. LEXIS 88606 (May 22, 2023)

‡ Anonymous v. Doe,
2023 WL 4471798 (EDNY Jul. 7, 2023)

Dagger (†) indicates discussion of *Sealed Plaintiff* factors. Double-dagger (‡) indicates citation to this Court's August 4th, 2020 decision.

**Appendix B:** Effects of enumerated *Sealed Plaintiff* factors (suggested).

| Factor | Text | Effect |
|---|---|---|
| F1 | whether the litigation involves matters that are highly sensitive and [of a] personal nature | ↑A (↓Vo) |
| F2.1 | whether identification poses a risk of retaliatory physical or mental harm to the party [seeking to proceed anonymously] | ↑A (↓Vo) |
| F2.2 | or even more critically, to innocent non-parties | ↓B (↑E) |
| F3.1 | whether identification presents other harms and the likely severity of those harms | ↑A (↓Vo) |
| F3.2 | including whether the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity | ↓B (↓Po) |
| F4 | whether the plaintiff is particularly vulnerable to the possible harms of disclosure, particularly in light of his age | ↑A (↓Vo) |
| F5.1 | whether the suit is challenging the actions of the government | ↓B (↑Pa) |
| F5.2 | or that of private parties | ↑B (↑Po) |
| F6.1 | whether the defendant is prejudiced by allowing the plaintiff to press his claims anonymously | ↑C |
| F6.2 | whether the nature of that prejudice (if any) differs at any particular stage of the litigation | ? |
| F6.3 | and whether any prejudice can be mitigated by the district court | ↓C |
| F7 | whether the plaintiff's identify has thus far been kept confidential | ↑A (↑Va) |
| F8 | whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose his identity | ↑B (↑Po) |
| F9 | whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities | ↓B (↓Po) |
| F10 | whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff | ↓A (↑Vo) |